(100 South. 688)

No. 24565.

THOMPSON v. COMMERCIAL NAT. BANK et al.

(April 30, 1924. Rehearing Denied by Whole Court June 7, 1924.)

*(Syllabus by Editorial Staff.)*

1. **Landlord and tenant ⟨⟩167(5) — Landlord held not solely liable for negligence in construction and maintenance of awning.**

Negligent construction and maintenance of awning in such condition that framework thereof fell and injured plaintiff when canvas portion had been burnt away *held* not within rule making landlord having superintendence of building solely responsible.

2. **Negligence ⟨⟩44, 63—Conditions exonerating owner of building from liability stated.**

The owner of a building is exonerated from liability for vices in original construction or from fall of any part of materials, where there was no fault or negligence imputable to him, and no original imperfection in structure, or where accident is result of fortuitous event of vis major.

3. **Landlord and tenant ⟨⟩167(5)—Lessee held negligent in construction and maintenance of awning.**

Lessee of building was negligent in constructing and maintaining awning in such condition that metal framework fell and injured plaintiff after canvas had been burnt away.

4. **Negligence ⟨⟩63—Fall of awning held not "fortuitous event."**

Within R. C. C. art. 3556, subds. 14, 15, defining "fortuitous event" as that which happens by a cause which cannot be resisted, fall of awning because metal framework had no sufficient support after canvas was accidentally burned away, was not a fortuitous event, in view of articles 670, 2322.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Fortuitous.]

5. **Negligence ⟨⟩48—Ignorance of condition of building or fact that defect not easily discovered not defense to action for injuries.**

Neither ignorance of condition of building. nor circumstance that defect could not be easily detected can be successfully urged by owner as defense to action for injuries resulting therefrom.

6. **Negligence ⟨⟩66(1) — Contributory negligence of one injured by falling awning held not established.**

Contributory negligence of one injured by falling framework of awning, after canvas had been burnt away, *held* not established; it appearing that he had no warning as to danger.

7. **Damages ⟨⟩131(6)—$500 damages for injuries from falling awning held insufficient.**

$500 damages for pain and suffering for three or four weeks, and temporary blindness and defective vision, from being struck on head with falling awning, and $50 for loss of time, *held* insufficient, and increased to $1,000.

Appeal from First Judicial District Court, Parish of Caddo; J. H. Stephens, Jr., Judge.

Action by Thomas Thompson against the Commercial National Bank and the Caddo Central Oil & Refining Company. From a judgment for plaintiff, second named defendant appeals. Judgment amended, and as amended affirmed.

Albert P. Garland, of Shreveport, for appellant.

J. M. Grimmet and Robert A. Hunter, both of Shreveport, for appellee.

By Division B, composed of Justices DAWKINS, LAND, and LECHE.

LAND, J. The Commercial National Bank is the owner of a banking house and office building in the city of Shreveport, and the Caddo Central Oil & Refining Company, as its lessee, occupies several offices on the seventh floor of said building.

On June 9, 1920, plaintiff was struck upon the head by a part of the metal framework of an awning precipitated from a window of one of the rooms of defendant oil company. He has brought the present suit to recover of defendants in solido damages in the sum of $5,000, as compensation for the injuries received by him. Plaintiff alleges that said awning was jointly and severally installed and attached to said building by defendants, and that the falling of its framework and the injuries sustained by him were caused by the failure and neglect of defendants to securely affix said awning and its framework to the window and building, and to maintain same in a safe condition.

Defendant oil company denies that it is guilty of any act of negligence in the erection of said awning, and alleges that same was securely attached in the usual manner, and would have remained so, had not the canvas and ropes supporting said awning been completely consumed by a fire caused by the act of some unknown third person in carelessly throwing, from a window above, upon said awning, a cigar, cigarette, or

156 LA.—16

some other lighted article. Defendant oil company alleges that the negligence of this third person in occasioning the destruction of the awning and its ropes by fire was the efficient cause of the injuries inflicted upon plaintiff; that the fault of said person could not have been foreseen or prevented by it; and that, under the law, it is not required to protect the public and plaintiff against such acts.

[1] Although it is not disputed that this awning was erected jointly by both the owner and the lessee, yet it is contended in the brief of counsel for defendant oil company that defendant bank is solely liable in damages to the plaintiff, as said bank is the owner of the building, and, as master, had the superintendence and police of its building, and is therefore responsible for the faults committed therein. R. C. C. art. 177.

This is, undoubtedly, a correct principle of law, where the thing thrown out of the master's house is the causa causans of the injury received by a passerby, or third person. Plaintiff's cause of action, however, is predicated squarely upon the legal proposition that, having erected the awning in question conjointly with the owner of the building, the lessee is bound in solido with the owner, and as a joint tort-feasor, for the injury resulting to plaintiff from defects in the original construction and failure to keep said awning in safe repair.

In the present case, moreover, we do not find from the evidence that the ignition of the awning and ropes by some unknown third person was the proximate cause of the falling of the framework of the awning.

It is clear from the evidence in the case that a part of the metal framework fell from the awning to the sidewalk and struck plaintiff, after the canvas and ropes of the awning had been consumed by fire.

It is also made plain from the record that one of the side rods of the awning became

detached from the front rod, into the elbow of which it had been screwed, before the rest of the framework gave way.

It is not disputed that the two side rods, or supports of the awning, tore loose the brackets fastening them to the window, and that the screws in the brackets were drawn out from the woodwork, before a part of the framework toppled over and fell.

The awning at the time of the fire was not fully down, but had been raised at an angle of about 15 degrees. It was attached to the window by screws placed through metalic eyelets in the canvas. This method of construction, evidently, gave a strong additional support to the metal framework. When this support was removed by the destruction of the canvas of the awning by fire, the metal framework, consisting of side rods one and one-fourth to one and one-half inches in diameter and five feet long, and of a front rod three to three and one-half feet long, was precipitated against the sill of the window, and the screws in the brackets of the side rods, thus subjected to a sudden strain, were wrenched from the woodwork of the window. It is true that the defendant oil company was in no way responsible for the fire, which seems to have originated from a lighted match, cigar, or cigarette tossed upon the awning from a window above in the building.

It is also true that, if the awning had been fully down at the time of the fire its framework may have remained intact, after the destruction of the canvas and the ropes. There are two clauses of cases in which this court has exonerated the owner from liability for vices in the original construction of a building or from the fall of any part of the materials composing it:

[2] First. Where there was no fault or negligence imputable to the owner, and there was no original imperfection in the structure. Burton Case, 15 La. Ann. 448.

Second. When the accident is the result of a fortuitous event of vis major. Barnes v. Beirne, 38 La. Ann. 280; 5 Larombiére, 795; Domat 1, p. 481, N. 7.

[3] The defendant oil company, however, does not come within either of these exceptions.

Admitting that said company was free from fault in setting out the fire, yet the evidence discloses that there were defects in the original construction of the awning. One of the side supports became detached from the elbow of the front support, and the brackets wrenched away the screws attaching the two side supports to the window. It is therefore apparent that the metal framework of the awning, when standing alone, was not affixed to the woodwork of the window in a manner sufficiently safe, nor was one of the side supports securely threaded into the front support. Awnings so constructed on an office building are a constant menace to the public on the sidewalk below, in the event the canvas becomes ignited, whether accidently or intentionally.

As a measure of public safety it therefore becomes necessary that such awnings should be constructed in such manner that the framework cannot give way, should the canvas of the awning become destroyed by fire.

Accidental fires of this character are likely to occur at any time, especially in a large office building, and liability vel non cannot be made to depend upon the particular angle at which the awning happened to be tilted at the time of the fire. Should we hold otherwise, we would have many decisions in such cases to be looked at from many different angles. Such holding would, moreover, tend to insecure construction of awnings, to the jeopardy of public safety.

Those accidents are said to be caused by superior force, which human prudence can neither foresee nor prevent.

[4] Fortuitous event is that which happens

by a cause which we cannot resist. R. C. C. art. 3556, subds. 14, 15.

The assistant chief of the Shreveport Fire Department testifies that there have been three or four awning fires at the Commercial National Bank Building at different times. There were two awning fires in other parts of the city during the week this witness testified in the case, and his testimony shows that such fires are not an unusual occurrence.

It is clear, therefore, that the fact that accidents may result in such cases can readily be foreseen. That injury to the public can be prevented by erecting awnings with metal frameworks sufficiently secure to sustain their own weight, after the canvas is consumed by fire, cannot be well questioned.

That awning fires can be resisted, at least to the extent of preventing the fall of the framework after the fire, and with due regard, in this respect, to public safety, cannot be successfully denied.

If awnings cannot be so constructed, then they should be dispensed with. Salus populi suprema lex. In referring to articles 670 and 2322 of the Revised Civil Code, this court said in the Camp Case, 7 La. Ann. 321:

"They are evidently founded in an enlightened view of public necessity. They protect the neighbor; the passenger in the street."

Article 670, R. C. C. provides that—

"Every one is bound to keep his buildings in repair, so that neither their fall, nor that of any part of the materials composing them, may injure the neighbors or [passersby], under the penalty of all losses and damages, which may result from the neglect of the owner in that respect."

Article 2322, R. C. C., is to the effect that—

"The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."

[5, 6] Neither ignorance of the condition of the building nor the circumstance that the defect could not be easily detected can be successfully urged as a defense by the owner. Barnes v. Beirne, 38 La. Ann. 280. While contributory negligence is a complete defense under this article, and is pleaded in this case, defendant oil company has failed to establish such plea. Frank v. Suthon (C. C.) 159 Fed. 174.

The plaintiff had no warning whatever as to the impending danger. There were only a few people near the bank building at the time of the fire. It was a sultry afternoon in June. The main witness of plaintiff was on the sidewalk, and only a few feet ahead, when the framework of the awning struck plaintiff and prostrated him on the sidewalk. The witness assisted in taking plaintiff, who was in a dazed condition, to a physician in the bank building. Plaintiff is therefore entitled to recover damages of defendant oil company for the injuries received by him. The defendant bank has been eliminated from the case by a nonsuit taken by plaintiff based upon a compromise of the liability of said bank, with reservation of all rights against defendant oil company.

Judgment was rendered in favor of plaintiff by the trial judge in the sum of $500 as damages for pain and suffering, and $50 for loss of time. Plaintiff has answered the appeal, praying for an amendment and increase of judgment to $2,500.

At the time of the accident plaintiff wore a thick felt hat, which served in a measure as a shield to protect him against the full force of the blow received upon the head. There was no fracture of the skull. Unquestionably there was pain, headache, and nervousness following the injury. The wound was over an inch long, and through the scalp to the bone. Dr. Herold examined plaintiff's injury on June 15, six days after the accident, and testifies that the wound appeared to have been a severe one, made by some blunt instrument; that plaintiff seemed to

be suffering at the time; and, from the nature of the wound, that plaintiff would have considerable pain for two or three weeks, sufficient to incapacitate him for work. ·Plaintiff testified that he suffered severely as a result of the injury, and that his eyes and nerves had been affected. Plaintiff was treated about a month by Dr. Ehlert, who stated on the witness stand that he had no reason to refuse to believe that plaintiff was suffering from headaches and some defective vision, as he claimed.

Dr. Ehlert examined plaintiff on October 28, 1920, the day before the commencement of the trial in the court below, and testifies that, as far as he could see, there was a nervous condition and slight scar and roughness of the bone at the point of the wound; the probabilities being that the blow slightly injured the bone.

Plaintiff testifies that shortly after the accident he could not see out of one of his eyes, and that, at the date of the trial, the eye would fill with water and become dim, but that its vision could be restored by rubbing it.

[7] The allowance of $500 for pain and suffering, extending over a period of from three to four weeks, caused by a severe wound is not an adequate compensation, even as to this element of the damages claimed by plaintiff. The judgment appealed from awards no compensation for the temporary blindness of the plaintiff and for defective vision following that condition and existing at the date of the trial, which was commenced over four months after the accident. A nervous condition also was noticeable at that late date.

In the case of Russell v. Shreveport Belt Railway, 50 La. Ann. 501, 23 South. 466, we allowed the sum of $1,000 for a partially dislocated shoulder and bruised arm. Plaintiff has sustained injuries about the head, equally as painful and serious, as those existing in the Russell Case, if not more so. It is almost a miracle that plaintiff's skull was not fractured, and that he did not die from concussion of the brain shortly after the accident. In our opinion the judgment of the lower court should be increased from $550 to $1,000, in order to meet the ends of justice in this case.

For the reasons assigned, the judgment appealed from is amended and increased to the sum of $1,000, and, as amended, is affirmed; defendant company to pay all costs.

Rehearing refused by WHOLE COURT.

O'NIELL, C. J., dissenting in refusing to grant rehearing.