Mrs. Mary Piegts, alleging that she was a resident in the premises No. 1417 Kelerec Street in the City of New Orleans, brought this suit against Mrs. Rosina Esposito Palombo, widow of Enrico Palombo, the owner of the property, claiming damages for physical injuries and property loss said to have been occasioned by the faulty condition of the roof of the property. The plaintiff alleges that on May 1st, 1937, there was a heavy rainfall which the defective roof was unable to withstand with the result that the premises were flooded with water, the plaster fell striking plaintiff on her head and body injuring her and that her furniture was ruined, for all of which damage and injury she claims the sum of $3,514.
The defendant answered admitting that the roof was damaged, but claimed that it was due to vis major. *Page 564 
Following a trial upon the merits there was judgment below in favor of the plaintiff in the sum of $250 and defendant has appealed. Plaintiff has answered the appeal asking that the judgment be increased to the amount prayed for.
In this court, as well as below, counsel for plaintiff makes the point that the special defense of vis major has not been properly pleaded, citing Quatray v. Wicker, 16 La.App. 515, 134 So. 313, 316. In the cited case the trial court refused to permit evidence tending to show contributory negligence upon the ground that the issue had not been raised by the pleadings. The defendant and appellant complained of this ruling and this court held that the action of the trial court was correct. In that case the answer averred that "your respondent pleads contributory negligence in the event it is found that the driver of the Wicker truck was in any way guilty of negligence, which is specially denied".
It is contended that the ruling in that case is applicable here because the special defense of vis major in the instant case is as improperly pleaded as was the special defense of contributory negligence in the Wicker case. The defense of vis major here is made in the following words:
"And now for further answer respondent shows that on the evening of April 30, 1937 and the morning of May 1, 1937, the City of New Orleans and adjacent vicinity was visited by a rain, wind and electrical storm of unprecedented proportions; that the wind velocity in some parts of the City reached twenty-four (24) and twenty-five (25) miles an hour and in other parts reached as high a velocity as forty (40) miles an hour; that said wind storm was of such proportions that it uprooted large oak and other trees in the City and did a tremendous amount of damage to property in this vicinity. Respondent shows that she has always kept the premises herein involved in sound condition of repair and that if plaintiff suffered any damage, which is denied, respondent shows that the damage was due to a superior force which respondent was not called upon to anticipate and for which respondent was in no wise responsible.
"Respondent further shows that the damage if any caused to petitioner was caused by vis major."
The argument is that there were not sufficient facts stated and insufficient detail concerning those that were pleaded. In this connection attention is directed to the failure of counsel to refer particularly to the premises No. 1417 Kelerec Street. There is considerable difference between the two cases which distinguish them, for example, the statement that the City of New Orleans and vicinity was visited by a storm and that such injury as may have been suffered by defendant's premises was caused by a superior force which, notwithstanding the sound condition of the property was caused by a vis major, is, it seems to us, a sufficient and proper statement of this defense, whereas in the Wicker case there is nothing but an expression of a conclusion of the pleader.
In Barnes v. Beirne, 38 La.Ann. 280, we find the following:
"Article 670, R.C.C., provides that every person is bound to keep his buildings in repair, so that neither their fall, nor that of any part of the materials composing them, may injure the neighbors or passengers (passans), under penalty of all losses and damages which may result from the neglect of the owner in that respect.
"Article 2322, R.C.C., is to the further effect: That the owner is responsible for the damage occasioned by its ruin, when this is caused by the neglect to repair, or is the result of a vice in its original construction.
"The owner however is entitled to exoneration from liability when the accident is the result of a fortuitous event or vis major. Larombiere, 5, 795; Domat, 1, p. 481, N. 7; also 15 [La.] Ann. 448, Burton's case."
In Thompson v. Commercial National Bank, 156 La. 479, 100 So. 688, 689, the Supreme Court said:
"* * * There are two clauses [classes] of cases in which this court has exonerated the owner from liability for vices in the original construction of a building or from the fall of any part of the materials composing it:
"First. Where there was no fault or negligence imputable to the owner, and there was no original imperfection in the structure. Burton Case, 15 La.Ann. 448.
"Second. When the accident is the result of a fortuitous event of [or] vis major."
Mr. R.A. Dyke, a meteorologist of the United States Weather Bureau, testifying on behalf of the defendant, said that the wind velocity on the evening of April *Page 565 
30th, 1937, and morning of May 1st, 1937, was between twenty-six and forty-two miles per hour and the rainfall 1.95 inches, 1.5 inches of which fell in a two-hour period.
Excerpts from the editions of the New Orleans Times-Picayune of May 1st, and May 2d 1937, were introduced in evidence from which it appears that several persons were killed in New Orleans and the vicinity as a result of an electrical storm, the electric light system was interrupted and wires blown down, trees uprooted and so on.
Mr. J.M. McDougall, foreman of the Electric Service Division of the New Orleans Public Service, testified that due to the effects of the storm one hundred and thirteen electric service wires were blown down and that, according to the records of his office, there were on April 30th, and May 1st, 1937, a total of seventy-three entries concerning serious damage to equipment, wires, feeders, etc. as contrasted with a normal daily report of such damages of between three and six.
Counsel for plaintiff objects to the testimony of Mr. Dyke, Mr. McDougall and to the introduction in evidence of the excerpts from the Times-Picayune upon the ground that none of this evidence shows specifically that the storm affected the property No. 1417 Kelerec Street. For example, he points out that Mr. Dyke's observations concerning the wind velocity were made at the Airport and on top of the Post Office Building, points remote from the Kelerec property. We believe this objection to be unsound in so far as the evidence tends to show that New Orleans was visited by an unusual electrical storm. Of course, this evidence, standing alone, does not prove that the premises on Kelerec Street were affected, but it does show that an electrical storm occurred in the City of New Orleans at the time mentioned in the evidence.
Mr. Albert Brandin, who had been in the roofing business in the City of New Orleans for over thirty-eight years, testified on behalf of defendant that he had repaired the roof of Mrs. Palombo's property on Kelerec Street after the storm, using 572 new slates in addition to over three hundred old ones for that purpose. He was positive that the damage to the roof was caused by the storm. When asked whether the storm was confined to any particular locality in the City, he replied that it extended all over the City "of course in some sections it hit harder than in others". He also stated that the section of the City in which the defendant's house is situated was hit harder than many other sections, and that he had more work than he could do for several months thereafter. He had about two hundred calls, but did not get all of the jobs and estimated that he repaired between sixty and sixty-five roofs.
We think the evidence of Mr. Brandin in conjunction with the other testimony in the record shows conclusively that the damage to the defendant's roof was occasioned by the violence of the storm and not due to the improper condition of the roof, for it was no ordinary rainstorm which occurred on the night of April 30th and the morning of May 1st, 1937, when the roof was damaged.
For the reasons assigned the judgment appealed from is annulled, avoided and reversed and it is now ordered that there be judgment herein in favor of the defendant dismissing plaintiff's suit at her cost.
Reversed.