Plaintiff, age sixty-five, weighing two hundred fifty pounds, with a fifty pound block of ice on his shoulder, while ascending the front porch steps to a cottage at 308 Douglas Street, Shreveport, Louisiana, owned by the defendant, was injured when the steps, as a whole, dropped to the ground. Plaintiff lost his balance and fell heavily to the ground, his left knee striking it violently. He, without assistance, arose to his feet, conversed with persons at the scene and, with some assistance, climbed into his one-horse delivery wagon nearby and drove home. He alleged that as the result of the accident the lower right side of his back and left knee joint were seriously and permanently injured; that his lower back, right side, and "center portion of his ribs" were sprained, all of which injuries, he says, "being bruises and sprains".
Plaintiff sued the defendant to recover for loss of earnings, for pain and suffering to the time of instituting this suit, for total and permanent disability, and for doctor's bills, etc. His suit is predicated upon the theory that through defendant's negligence the steps deterioriated to such extent that they fell while he was thereupon.
Defendant denies all allegations of the petition save those to the effect that he owned the building to which the steps were attached. He avers that the steps, though sound, and free of original defects, simply fell because of the unusual and excessive weight put upon them by plaintiff; that he should not have put his entire weight, augmented by that of the ice, upon the steps, and by doing so he negligently contributed to the accident to such extent as to bar recovery by him.
There was judgment for plaintiff for $1,440.00, made up of the following items, according to its language, to-wit:
Loss of earnings $1,050.00 Doctor's bill 125.00 Cost of belt 15.00
These items aggregate only $1,190.00. Evidently, the trial judge intended to include an amount for pain and suffering, but inadvertently omitted same.
Defendant appealed. Plaintiff has not answered the appeal and in no respect does he complain of the judgment.
That the steps fell from plaintiff's weight and that of the ice, there is no dispute. However, he had been ascending these same steps with the same quantity of ice, two or three times per week, for some two years, and had the right to assume they were in sound condition and would sustain his weight plus the ice. The record does not disclose the condition of the sill to which the steps were nailed, nor the number of nails used to hold them in place. The porch was open, exposed to rain and sunshine, and it is reasonable to assume, as we do, that the wood about the nail holes became weakened from decay, especially the front of the sill, making it possible, under heavy weight, for the steps to pull loose and fall, as they did. It is not shown when the steps were built or last repaired, nor the age of the building.
Defendant owns a large number of small residences in the City of Shreveport that he rents, some to white tenants and others to Negro tenants. In the present case the house was occupied by a Negro woman. Defendant testified that he regularly inspects his buildings to keep informed as to their physical condition. He was unable to recall the last time he inspected the steps in question. He also admits that he personally re-erected the steps involved herein the day they fell, but says he had no knowledge at that time that they fell under plaintiff's weight; and, further, says such knowledge only reached him some eight months after the accident.
[1] The undisputed facts of the case, when considered in the light of Articles Nos. 2322 and 2695 of the Civil Code, and recent jurisprudence dealing with the liability of landlords to tenants, invitees and licensees, warrants judgment for plaintiff, but we experience some difficulty in determining the correct amount due him.
Thomson et al. v. Cooke et al., 147 La. 922, 86 So. 332, is in point. The syllabus in part, reads:
"The fact that a landlord and her carpenter made inspection of the premises, and *Page 548 
discovered nothing wrong or needing attention, did not relieve the landlord from liability for injuries resulting from a decayed condition of a step, under C. C. 2695.
"A guest of a lessee, injured by reason of a defect in a step, stands in the shoes of the lessee for invoking the benefit of Civ. Code, art. 2695, under which the lessor guarantees the lessee against all vices and defects in building."
Klein v. Young et ux., 163 La. 59, 111 So. 495, expounds the law on the subject, and applies Article No. 2322 of the Civil Code. The syllabus in this case, so far as pertinent, reads:
"Obligation imposed on owner of building, under Civ. Code, art. 2322, to answer in damages to person injured by neglect of owner to keep building in repair, arises ex delicto.
"Right of action, under Civ. Code, art. 2322, against owner of building, for injuries resulting from neglect to keep building in repair, is in favor of one injured while lawfully on premises or inside of building, as well as in favor of neighbors and passers-by."
[2] The fall of a person of plaintiff's weight for only two feet inevitably would incur considerable shock, pain and resultant soreness, even though no bones were fractured or broken. As to the duration of the pain and soreness and total disability therefrom, the record in this case is not as clear as we would like to have it; nor is it as clear as we believe it could have been made.
Only two physicians examined plaintiff to determine the nature and extent of his injuries and the cause of his asserted disability to follow his former trade of vending ice or of doing other gainful work. Of course, plaintiff testified that he pained incessantly and could not do manual labor. He is not qualified to earn a living otherwise. However, no member of his family nor a single friend testified in support of his professed impaired physical condition.
Dr. Lacy, colored, examined plaintiff the day after the accident and prescribed treatment for him, consisting of diathermy and taping the lower back. Plaintiff then complained of his left knee and lower part of his back. The doctor made no X-rays because plaintiff was unwilling to pay for them and stated that he felt sure he would soon be all right.
Plaintiff did not improve much; in fact, none, according to his statement to Dr. Lacy, and then the doctor advised him to buy and wear a sacro-iliac belt to support the lower part of his back, and he did this.
Plaintiff, before he was able to walk and thereafter constantly complained to Dr. Lacy of his asserted wretched physical condition, so much so that the doctor says: "He almost got on my nerves." Dr. Lacy testified that plaintiff's complaints just prior to trial were as mournful as those made by him immediately after the accident. He made it quite clear that he did not know whether plaintiff was suffering the pain he professed to suffer or not, but underlying his testimony as a whole, we perceive in it a mild innuendo of doubt on the subject.
Dr. S.W. Boyce examined plaintiff and made X-ray pictures of the knee and back in the early part of December, which was about ten months after the accident. He found no evidence whatever of injury from the fall. The X-rays revealed no sign of fracture or breaks of the bones. Urinalysis disclosed pus cells. His gums were badly infected with pyorrhea. Dr. Boyce sums up what the X-rays disclosed in the following language, to-wit: "There was marked sign of bone disease in the form of a hypertrophic arthritis; that is increased bone formation around the old arthritic joints with lapping of the vertebrae, the bony bridges extending from one joint to the other. X-ray of the left knee showed no sign of bone injury. There was some thickening around that knee which was, in my opinion, arthritic in nature."
Dr. Boyce was unable to connect the physical condition found by him with the injury of some ten months prior. He says it was "a simple case of old chronic arthritis" caused by focal infection, commonly known as rheumatism, which would produce the subjective symptoms of which plaintiff complained. At the date of this examination, there were not existent any signs of injury from the fall. Dr. Boyce *Page 549 
was certain the physical conditions found by him existed prior to the accident and were only aggravated thereby. He believes plaintiff has fully recovered from the soreness that followed the fall and is certain any pain and/or discomfort now experienced by him have as their basis the arthritic and other pathological conditions mentioned above. These, he says, will continue so long as plaintiff lives.
Dr. Boyce was sure plaintiff was not entirely sincere in professing to be disabled from the aches of the knee and back. He was at that time wearing the sacro-iliac belt but the doctor believed he was doing so for effect rather than from necessity. Finally, the doctor opined: "A man with this arthritis, there has to be some time when he reaches the end of his rope, and if this fall gave him a temporary disability, it might be in his mind that he was old enough to quit and sore enough to quit, and it was a good time to quit and get paid for it."
We are disposed to agree with Dr. Boyce in his opinion as regards plaintiff's disability. We are sure, at least, plaintiff is largely exaggerating his condition. It is certain the pain he now experiences is the same sort experienced by all persons having physical infirmities of the character that now beset him. The fall should not be entirely credited with his present disability to do his former work, if such disability really exists.
Plaintiff sued for weekly profits of $35.00 for thirty weeks. His own testimony in support of this claim is all he offered. The records of the ice company from whom he purchased ice, or sales tickets therefor, would have been material to his case if he is not mistaken in what he says. The lower court accepted his testimony as to profits and also held that he had been disabled to pursue his former trade for thirty weeks. We are constrained to believe the trial judge failed to take into consideration the physical conditions found by Dr. Boyce, and revealed by the X-ray pictures, which evidently existed at the time of the accident, in determining the amount of award on this phase of the case. Undoubtedly, these pre-existing physical conditions contributed to a large extent to the duration of plaintiff's disability. We believe a fair solution of this issue would be accomplished by cutting the time in half; that is, credit the fall with disability for fifteen weeks only, or $525.00. To this amount an award for pain and suffering should be given him. This we fix at $250.00. To these two items should be added the doctor's bill of $125.00 and the cost of belt of $15.00, making a total of $910.00.
Defendant cites: H. A. Burton and wife v. Wm. F. Davis et al, 15 La. Ann. 448; Thompson v. Commercial National Bank et al.,156 La. 479, 100 So. 688; Plescia v. Le Roy, 148 La. 316, 86 So. 824, in support of his contention of nonliability herein. The facts of neither of these cases parallel those of the case at bar, and, therefore, do not serve to exonerate defendant from liability to plaintiff.
For the reasons herein given, the judgment appealed from is amended by reducing same to $910.00, and, as amended, it is affirmed with costs, excepting those incurred in this court, which are hereby taxed against appellee.
KENNON, J., absent.