324 So.2d 441 (1975)
Daniel F. LOESCHER, Sr., Plaintiff-Appellant-Relator,
v.
George PARR and State Farm Fire and Casualty Company, Defendants-Appellees-Respondents.
No. 56402.
Supreme Court of Louisiana.
December 8, 1975.
Dissenting Opinion December 22, 1975.
Rehearing Denied January 16, 1976.
*443 Rudolph R. Schoemann, New Orleans, for plaintiff-appellant-relator.
Dale E. Branch, Seal, Lee, Branch & Brown, Bogalusa, for defendants-appellees-respondents.
Dissenting Opinion of Sanders, C.J., December 22, 1975.
TATE, Justice.
The plaintiff Loescher's automobile was demolished when a tree from a neighboring lot fell across it. He sues Parr, the owner of the neighboring lot, and Parr's homeowner's liability insurer (State Farm).
The court of appeal affirmed the district court's dismissal of the suit, holding that no negligence on Parr's part is proven. 312 So.2d 347 (La.App.1st Cir. 1975). We granted certiorari, 313 So.2d 833 (La.1975), to consider the correctness of the holding that the owner of a diseased tree cannot be held for damage caused to a neighbor (who is himself without fault) by the fall of the tree because of its diseased condition.
The Facts
The tree which fell was a magnolia tree some sixty feet high. From the outside, *444 the tree did not appear to be obviously diseased. However, in fact, the magnolia was 90% Rotted out and hollow beneath its outside structure of the bottom portion of the trunk. The tree was situated on the defendant Parr's home lot six feet from his home.
At 3:00 a.m. the tree fell across the property line and onto the plaintiff Loescher's Cadillac on the neighboring lot. The vehicle was parked in the parking lot of the apartment house into which Loescher had moved three weeks earlier.
The primary cause of the fall was the diseased condition of the tree. The weather was windy, of a nature that occurs in the vicinity about thirty times a year; but the wind was not even of storm nature. The only tree that was damaged or fell in the town was the present one.
The Legal Issue
The trial and intermediate courts held that Parr could not be held liable for the fall of his diseased tree in the absence of proven negligence on his part. These previous courts accepted his testimony that, from the outside, the tree did not appear to be diseased. They rejected testimony, as mistaken, of a tree surgeon that, shortly before the accident, he had warned the defendant's wife of the defective condition of the tree and recommended its removal.
We are not prepared to hold that the trial court committed error in its appreciation of the facts. Canter v. Koehring, 283 So.2d 716 (La.1973). Thus, we accept the factual holding that the tree was internally diseased but that the owner could not reasonably realize its defective condition, although such defect of the tree constituted an unreasonable hazard of injury to those upon whom it might foreseeably fall.
The issue remains whether, nevertheless, the owner of a tree with such a defect may be held liable to others injured by reason of such defect, even in the absence of negligent conduct or inattention on his part.
The plaintiff argues that the owner is liable for damage caused by the defect of a thing in his custody. Civil Code Article 2317. The plaintiff further contends that, at any rate, the owner should be held liable for the fall of a diseased tree, analogously to the strict liability of an owner of a building for its fall due to a structural defect or to his neglect to repair it. Civil Code Articles 670, 2322.
Liability of an Owner for the Fall of His "Building" At the least, the liability of an owner for harm caused because of a defect in his building is illustrative of the strict liability here sought to be imposed upon the owner of a tree for harm caused through its defect.
Under Louisiana law, founded on Articles 670[1] and 2322[2], the owner of a building is liable to a neighbor or passer-by injured through the fall of his building due either to a vice in its original construction or to his neglect to repair it. His fault is founded upon the breach of his obligation to maintain or repair his building so as to avoid creation of risk of undue injury to others.
Neither ignorance of the condition of the building, nor circumstances that the defect could not easily be detected, absolve the owner from his liability for damages so *445 caused. He is absolved from such liability only if the thing owned by him falls, not because of its defect, but rather because of the fault of some third person or of the person injured thereby, or because the fault is caused by an irresistible cause or force not usually foreseeable, Article 3556(14), (15) (usually, an act occasioned exclusively by violence of nature without the interference of or contribution by any human agency).
See: Klein v. Young, 163 La. 59, 111 So. 495 (1927); Thompson v. Commercial National Bank, 156 La. 479, 100 So. 688 (1924); Barnes v. Beirne, 38 La.Ann. 280 (1886); Camp v. Church Wardens, 7 La.Ann. 321 (1852); Crawford v. Wheless, 265 So.2d 661 (La.App.2d Cir., 1972); Anslem v. Travelers Insurance Company, 192 So.2d 599 (La.App.3d Cir., 1966); Green v. Southern Furniture Company, 94 So.2d 508 (La.App.1st Cir., 1957); Comment, 42 Tul.Law Rev. 178 (1967).
In arguing for similar liability here, the plaintiff Loescher points out that a tree is an immovable thing considered as part of the land to which it is attached. Articles 462, 465.
If the tree can be considered a "building", its fall is within the strict liability envisioned by Articles 670, 2322. Davis v. Royal-Globe Insurance Companies, 257 La. 523, 242 So.2d 839 (1970). See also: Cothern v. La. Rocca, 255 La. 673, 232 So.2d 473 (1970). However, as the reasoning of the latter decision indicates, under our jurisprudence there is substantial doubt as to whether a tree can be considered a "building" for purposes of the owner's strict liability under Articles 670, 2322.
Nevertheless, as will be set forth more fully below, Article 2317 (to be quoted below) provides for the liability of an owner of things for damages caused through their defect. In the scheme of the Civil Code of Louisiana, which is based upon the scheme of the French Civil Code, this article rather than Articles 670 and 2322 is the code basis of the fault of an owner in possessing and failing to properly maintain a tree on his property which, through its defect, falls and causes injury to a neighbor or passer-by who is himself without fault.
We pretermit, therefore, whether by analogy the strict liability of an owner for damages caused through a defect of buildings on his premises might not also include a liability for damages caused by fault or ruin of any other immovable part of his premises, such as a tree. But see Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971).
The "Fault" Scheme of the Civil Code
Articles 2315 through 2324 of the Louisiana Civil Code comprise the code's entire chapter of legal principle regulating offenses and quasi-offenses.
The underlying principle is provided by Article 2315: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. * * *" The remaining articles constitute amplifications as to what constitutes "fault" and under what circumstances a defendant may be held liable for his act or that of a person or thing for which he is responsible.
Article 2316 provides for delictual (tort) responsibility for negligent acts or omissions: "Every person is responsible for the damage he occasions not merely by his act, but his negligence, his imprudence, or his want of skill." However, negligence is not necessarily a basis for the obligation to respond in damages for harm caused by persons or things for which we are responsible as provided by the subsequent Articles 2317 through 2322.[3]
*446 We have already noted that the owner of a building is held to strict liability under Article 2322 for damage caused by a defect in his building, without regard to his own personal negligence. Likewise, under Article 2320 it has long been settled that a master (employer) is liable for the harm caused through his servant's (employee's) unreasonable creation of risk of injury to others (negligence), despite the freedom from personal negligence of the master thus vicariously held liable. See Blanchard v. Ogima, 253 La. 34, 215 So.2d 902 (1968), citing long-established jurisprudence.
Recently, upon examination of the code scheme of fault liability, we held that under Article 2318 the parent of a minor child is liable for the damage caused by the child's conduct which creates an unreasonable risk of injury to others, even though the parent himself is not personally negligent and the child is too young to be personally negligent. Turner v. Bucher, 308 So.2d 270 (La.1975), following Mullins v. Blaise, 37 La.Ann. 92 (1885) and overruling intervening jurisprudence. Likewise reverting to earlier jurisprudence, in Holland v. Buckley, 305 So.2d 113 (La.1974) we held that under Article 2321 the owner of an animal which creates an unreasonable risk of injury to others is liable for the harm done by that animal because of its deficient conduct, even though the owner himself was not personally negligent.
The principle of legal fault thus recognized under Articles 2318, 2320, 2321, and 2322and indicated as applicable under Article 2319[4], it is argued, should also be held to apply to the liability under Article 2317 of the guardian (in this case, the owner) of a thing for damages caused by its defect.
Summary of Principles of Legal Fault under Articles 2318, 2320, 2321 and 2322
To summarize the principle of legal fault thus already recognized in favor of an injured person himself without fault:
When harm results from the conduct or defect of a person or thing which creates an unreasonable risk of harm to others, a person legally responsible under these code articles for the supervision, care, or guardianship of the person or thing may be held liable for the damage thus caused, despite the fact that no personal negligent act or inattention on the former's part is proved. The liability arises from his legal relationship to the person or thing whose conduct or defect creates an unreasonable risk of injuries to others.
The fault of the person thus liable is based upon his failure to prevent the person or thing for whom he is responsible from causing such unreasonable risk of injury to others. Thus, the person to whom society allots the supervision, care, or guardianship (custody) of the risk-creating person or thing bears the loss resulting from creation of the risk, rather than some innocent third person harmed as a consequence of his failure to prevent the risk. His fault rests upon his failure to prevent the risk-creating harm and upon his obligation to guard against the condition or activity (by the person or thing for which he is responsible) which creates the unreasonable risk of harm to others.
This jurisprudence recognizes that the injured person must prove the vice (i. *447 e., unreasonable risk of injury to another) in the person or thing whose act causes the damage, and that the damage resulted from this vice. Once this is proved, the owner or guardian responsible for the person or thing can escape liability only if he shows the harm was caused by the fault of the victim, by the fault of a third person, or by an irresistible force.
The legal fault thus arising from our code provisions has sometimes been referred to as strict liability.
The plaintiff argues that Article 2317 by its express terms statutorily mandates these principles of legal fault as applicable when an innocent neighbor or bystander is damaged because of the vice or defect of a thing (the tree); just as we have already recognized these principles of legal fault as applicable and mandated by the companion articles (2318, 2320, 2321, 2322) in the series mandating legal fault for the acts of persons or things for which we are responsible.
Liability of the Owner-Guardian of a Thing under Article 2317
Article 2317 provides: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of things which we have in our custody. This however, is to be understood with the following modifications." [5]
This provision of our 1870 civil code was also found in our civil codes of 1808 and 1825. Civil Code 1808, p. 320, Art. 20, par. 1; Civil Code of 1825, Article 2296. In French text, it is identical to French Civil Code Article 1384(1) (which, however, does not contain the last sentence).
The provision that one is responsible for damage "which is caused by the act.. . of things which we have in our custody" is a translation of the provision of the French article, taken verbatim from the French Civil Code, that one is responsible for damage "qui est cause par le fait . . . des choses que 1'on a sous sa garde." See Article 2317 La.C.C.Comp.Ed. in 17 West's LSA-C.C. p. 17 (1972).[6]
Articles 2315 through 2322 express the same concepts and represent the same scheme as French Civil Code Articles 1382 through 1386, of which they are to a large part verbatim translations. See Articles 2315-17 La.C.C.Comp.Ed. in 17 West's LSA-C.C. pp. 14-21 (1972). In this context, in applying the French verbatim counterpart code provision, the liability of the guardian of a thing for damages caused through the vice or defect of the thing has been interpreted as providing for liability of the guardian without personal negligence on his part, his legal fault (as *448 also in the case of the owner of a building or of an animal) being based upon the breach of his legal obligation to keep his thing in such condition or in such control that it does no damage to others. These interpretations have been reached not only in France but also in Belgium and in Quebec, which like Louisiana adopted a civil code scheme of articles and concepts based almost verbatim on the articles of the French Civil Code.
See: Tunc, Louisiana Tort Law at the Crossroads, 48 Tul.L.Rev. 1111 (1974); Starck, The Foundation of Delictual Liability in Contemporary French Law, 48 Tul.L.Rev. 1043 (1974); Stone, Liability for Damage Caused by Things, 11 International Encylopedia of Comparative Law, chapter 5, nos. 24-29 (1970). See also H.L. & J. Mazeaud, Traite Theorique et Pratique de la Responsibilitie Civile, Volume 2, Nos. 1009-18, 1138-1273 (6th ed. 1970); Verlander, We are Responsible . . ., 2 Tulane Civil Law Forum, No. 2 (1974).
We find no reason why Civil Code Article 2317 should not be interpreted as incorporating a similar concept of legal fault. As with the French, Canadian, and Belgian counterpartseach found in the same code scheme of delictual liability, the code provision for the liability of the owner of a thing for damages caused by its vice would be unnecessary if the basis of code liability thus expressly provided were only for negligence, a basis already provided by the preceding Article 2316 (and its preceding counterparts in the French, Canadian, and Belgian codes).
Further, as noted, we have previously adopted the concept of legal fault without personal negligence of a parent for the deficient act of his child (Article 2318), of an employer for the deficient act of his employee (Article 2320), of an owner for the damage caused through the deficient act of his animal (Article 2321), and of an owner for the damage caused by the defect of his building (Article 2322). It is logically consistent and in accord with the scheme of delictual responsibility represented by these companion code articles to hold that, similarly, Article 2317 embodies the concept of the legal fault of the guardian of a thing for the damage caused by the defect of his thing.
The implication to the contrary in Cartright v. Firemen's Insurance Co., 254 La. 330, 223 So.2d 822 (1969) is inconsistent with the earlier jurisprudence interpreting Articles 2320 and 2322, cited above, and with the later jurisprudence interpreting Articles 2318 and 2321, also cited above (as well as with the interpretations by other civilian jurisdictions of comparable provisions of their civil codes set in similar code context as Louisiana's Article 2317). The interpretation of Article 2317 we reach today is more in accord with jurisprudence interpreting companion code articles and with the functional intent of Article 2317 within our Civil Code's general scheme of fault liability.
The Fall of a Tree
With regard to liability for the fall, the tree, is a thing, see Civil Code Articles 462, 465. In civilian jurisdictions, such as France, Belgium, and Spain, the owner of a tree is liable for the fall of a tree due to its disease or decay, without negligence on the owner's part. Stone, cited above, Nos. 81-89. Mazeaud, cited above, No. 1269. See also Demogue, Responsabilite pour la chute d'un arbe, Rev.Trim.Dr.Civ. 345 (1936). These authorities note that the owner may be liable, though the tree's fall results also from an external force such as a wind or an accident in the course of felling it.
See also French decisions, such as: Civ., June 11, 1936, S. 1936.1.346, Gaz.Pal. 1936.2.265; Civ., Dec. 1946, S. 1947.1.46, Gaz.Pal. 1947.1.129; Civ., Jan. 5, 1962, D. 1962, somm. 98; Civ., May 12, 1966, D. 1966.700, Note by Azard; Chambery, June 21, 1961, D. 1961.710.
Our brothers of the Second Circuit analogously have held a landlord liable to his *449 tenant for damages caused by the fall of a tree, although it fell without negligence on the landlord's part. Pollard v. Roberts, 306 So.2d 801 (La.App.2d Cir. 1975). The liability imposed was essentially founded upon the strict liability of an owner-landlord to his tenant for vices or defects in the premises, Civil Code Articles 2692, 2695, a liability similar in nature to the strict liability of an owner to a neighbor or passerby for damage caused by vices or defects of his building.
Application of these Principles to the Present Facts:
In the present case, the plaintiff neighbor has proved (a) that the thing (tree) which caused the damage was in the care (custody) of the defendant owner,[7] (b) the defect or vice of the tree, and (c) that his damage occurred through this defect or vice. The owner-guardian of the defective tree is therefore liable for his legal fault in maintaining the defective tree and in preventing its vice from causing injury, unless he prove that the damage was caused by the fault of the victim, by the fault of a third person, or by an irresistible force.
The owner contends that the high wind of the night constituted such an intervening force exculpating him from liability. However, the force contemplated by the jurisprudence is an event which happens from an irresistible cause or force not foreseeable, usually a vis major or act occasioned exclusively by the violence of nature without the contribution by legal fault of any human. Article 3556(14), (15); Thompson v. Commercial National Bank, 156 La. 479, 100 So. 688 (1924); Barnes v. Beirne, 38 La.Ann. 280 (1886).
Here, the wind, although high and gusty, was not so abnormal as to be unforeseeable. The wind was not, for instance, of hurricane force, so as to permit its being classified as a reasonably unforeseeable violent manifestation of nature causing the damage independent of any defect of the tree, since a healthy tree as well as a diseased one might be overblown.
The defendant owner-guardian of the tree, therefore, is not exculpated of liability, for the wind was not under our code a fortuitous event. The gust of wind which contributed to the fall of the diseased tree was not unforeseeable in the vicinity, nor was it of irresistible force. No showing is made that the fault of the victim or of any third person contributed to (i.e., was a substantial factor in) the fall of the tree.
The record establishes the damages sustained at $2,741.43, the amount of the estimate and incidental costs of towing and storage. The plaintiff claims that a greater loss of value is proved, but we agree with the defendant that in this instance the record does not preponderantly support a great award.

Decree
For the reasons assigned, we reverse the judgments of the district court and of the court of appeal. We render judgment in favor of the plaintiff, Daniel P. Loescher, Sr., and against the defendants, George Parr and the State Farm Fire and Casualty *450 Company, holding these defendants solidarily liable for the sum of Two Thousand Seven Hundred Forty-One and 43/100 ($2,741.43) Dollars, together with legal interest from date of judicial demand until paid and for all costs of these proceedings.
Reversed and rendered.
BOLIN, J., concurs.
MARCUS, J., dissents and assigns reasons.
SUMMERS, J., dissents and assigns reasons.
SANDERS, C.J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
I respectfully dissent.
Articles 2315 and 2316 of the Civil Code announce the general rule of delictual liability, that is, one is obliged to repair the damage he occasions to another through his own act or failure to act. Recovery under these articles is allowed only when the author of the damage is proved to be at fault. In addition to damage caused by our own act or failure to act, we are responsible for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. La. Civil Code art. 2317 (1870). Articles 2318-22 delineate the rules of civil responsibility for the damages caused by the minor children and wards, insane persons, employees, students, animals, and buildings in one's custody. Recently, this court held that pursuant to articles 2318 and 2321 the responsible party is liable for the damage caused by his minor children or animals whether or not he was at fault. Turner v. Bucher, 308 So.2d 270 (L.1975); Holland v. Buckley, 305 So.2d 113 (La.1974). Even assuming the correctness of these decisions, which were themselves departures from settled, considered Louisiana jurisprudence,[1] I cannot agree with the result reached by the majority in this case.
Article 2317 (the counterpart of French Code civil art. 1384, par. 1) does not, in my view, decree that one is liable despite absence of fault for the damage occasioned by all things or persons in his custody, as the majority states. There is no doubt that, at the time of its redaction in 1804, article 1384, par. 1 had for its only purpose to announce certain special responsibilities for the damage caused by certain things: animals (art. 1385) and buildings (art. 1386). In other cases of damages caused by things, the victim had to prove the fault of the person (in "custody" of the thing) sought to be held responsible. In what the late Boris Starck, Professor of Civil Law at the University of Paris, has described as an "audacious interpretation" of French Code civil article 1384, par. 1, the Court of Cassation held in 1896 that the article could be applied to the acts of things other than those later enumerated. Cass. civ., June 16, 1896, S. 1897.1.17. Hence, "[t]his text, isolated from the others that, in truth, it was intended to introduce, was taken as having posited an autonomous rule: One is responsible for the act of things that are in one's custody (care); therefore, the victim was excused from proving the fault of the party responsible." Starck, The Foundation of Delictual Liability in Contemporary French Law: An Evaluation and a Proposal, 48 Tul.L.Rev. 1043, 1050 (1974) (emphasis in original). Prior to this decision, the principle that liability without fault could be imposed for the damage caused by things in one's custody was strictly interpreted, in accordance with the redactors' aforesaid original intent. See 2 H.L. & J. Mazeaud, Traite theorique et pratique de responsabilite civile, nos. 1014, 1141 (6th ed. 1970).
In any event, the Louisiana Civil Code expresses even more clearly than the *451 French Code civil the limitations in the principle that article 2317 announces. For article 2317 states that the principle establishing responsibility for the acts of persons for whom we are answerable and for things we have in our custody is to be understood with the following modifications. This sentence, absent from the French text and Louisiana Civil Code of 1808, was added by the redactors of the Civil Code of 1825. The "following modifications" are the next five articles of the Code, which enumerate the specific classes of persons or things for whose damage one is responsible regardless of his lack of fault. Therefore, article 2317 was intended by the redactors of the Civil Code of 1825 to be a transitional article, rather than an autonomous rule of civil liability.
Because "trees" are not among the "things" named in articles 2321-22, plaintiff is not entitled to recover damages under article 2317. Nor can plaintiff recover under articles 667 or 670, as he contends. Article 667 imposes liability without fault upon proprietors for their constructions or activities. Chaney v. Travelers Insurance Co., 259 La. 1, 249 So.2d 181 (1971). Defendant did not conduct any activities on his property resulting in plaintiff's damages. Article 670 imposes liability without fault only for the damages caused by the fall of Buildings, or a material part thereof, to neighbors or passengers.
The only articles involved in this case are 2315 and 2316. The court of appeal found, as a factual matter, that defendant committed no act that contributed to the tree's disease, and that he was not aware before its collapse of its defective condition. The majority does not dispute these findings of fact. Clearly, defendant was not at fault. Therefore, no recovery is possible under these articles.
Accordingly, I would affirm the judgments of the trial court and the court of appeal, dismissing plaintiff's suit at his cost.
SUMMERS, Justice (dissenting).
I dissent for the reasons assigned by Mr. Justice Marcus.
SANDERS, Chief Justice (dissenting).
I agree with the well-reasoned dissent of Mr. Justice Marcus and adopt his views as my own.
NOTES
[1] Article 670 provides:

"Every one is bound to keep his buildings in repair, so that neither their fall, nor that of any part of the materials composing them, may injure the neighbors or passengers [passers-by], under the penalty of all losses and damages, which may result from the neglect of the owner in that respect."
[2] Article 2322 provides:

"The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it it the result of a vice in its original construction."
[3] Article 2317 provides for liability for damages caused by a person for whom we are responsible or by a thing in our custody. Article 2318 provides for liability of a parent or tutor for acts done by a minor for whom he is responsible. Article 2319 provides for liability of a curator for damage done by his interdict. Article 2320 provides for the liability of an employer for the act of his employee in the exercise of the employment. Article 2321 provides for the liability of an owner of an animal for harm done by it. Article 2322 provides for the liability of an owner of a building for damage occasioned by its fall.
[4] This concerns the liability of a curator for the act of an insane person under his care. See: Turner v. Bucher, 308 So.2d 270, 275-76 (1975); Scott v. McCrocklin, 29 So.2d 619 (La.App.2d Cir. 1947), Noted, 8 La.L.Rev. 144 (1947); Yancey v. Maestri, 155 So. 509 (La.App.Orl.1934); Stone, Tort Doctrine in Louisiana, 17 Tul.L.Rev. 159, 189-92.
[5] The "modifications" are set forth by the "following" Articles 2317-2322. Thus, an employer is answerable for the damage occasioned by his servants "in the exercise of the functions in which employed." Article 2320. The owner of an animal is answerable for the damage it causes, unless "the animal had been lost, or had strayed more than a day" in which case a different measure of responsibility is provided. Article 2321. The owner of a building is reponsible for the damage caused "by its ruin." Article 2322. The other articles in the series do not provide any other modification of the liability of the owner of other things for the damage they cause.
[6] At this point, however, we should note that the English translation of "sous sa garde" as "in our custody" does not fully express the concept of the "garde" of a thingthe legal responsibility for its care of keeping, so that one may lose the custody of a thing without losing its "garde". H.L. & J. Mazeaud, Traite The orique et Pratique de la Responsabilite Civile, Volume 2, No. 1160 (6th ed. 1970); Verlander, We are Responsible . . ., 2 Tulane Civil Law Forum No. 2, p. 61 (1974).

At Note, Things in One's Custody, 43 Tul.L.Rev. 907, 912 (1969), a French legal dictionary is quoted as defining "garde" as: "Obligation imposed by the law on the proprietor of a thing or of an animal or on the one who avails himself of it to prevent this thing or this animal from causing damage to others." It is there noted that French doctrinal writers afford the term an even broader definition.
[7] In Verlander, We are Responsible . . ., 2 Tulane Civil Law Forum, No. 2, p. 64 (1974), which contains a perceptive and thorough analysis of the French, Quebecois, and Louisiana interpretations, it is suggested: "[T]he things in one's care are those things to which one bears such a relationship as to have the right of direction and control over them, and to draw some kind of benefit from them. This relationship will ordinarily be associated with ownership, but the guardianship will also belong to the bailee, the lessee, the usufructuary, the borrower for use and the repairmen, among others. It will not belong to the agent or the mandatory, the employee or the servant, or to anyone else for whom there is a responsible principal. The owner may transfer the guardianship by transferring the thing to another who will bear such a relationship to the thing as to himself have the care of it. He may also lose the care of this thing, principally by the theft of the thing."
[1] For that reason, I dissented in both cases. Likewise, I must dissent to the overruling by this case of Cartwright v. Firemen's Insurance Co., 254 La. 330, 223 So.2d 822 (1969).