CHIASSON, Judge.
This is an action for damages caused by an electric overcurrent at the Admiral Ben-bow Motel in Baton Rouge, Louisiana.
William Gordon Hines, plaintiff-appellant, as owner of the motel, seeks damages for replacement of 85 compressor motors in the air conditioning units, loss of revenue for nonuse of the rooms and loss of food and beverage revenues. Judgment was rendered in favor of defendant Dixie Electric Membership Corporation (Dixie) denying recovery to plaintiff. Plaintiff appealed alleging the trial court erred: 1) in not holding that defendant was strictly liable for the damages; 2) in not finding that the contract between the parties was ambiguous; and 3) in not finding the defendant negligent.
Dixie is a corporation owned by the customers who subscribe to it. A membership contract is entered into between the customer and Dixie which provides for certain responsibilities on the part of both parties. In addition, a set of bylaws governs the relationship between the two parties. Both of these documents were introduced into evidence and form the contractual relationship for this suit.
Plaintiff agreed to be bound by Dixie Consumer Handbook and Bylaws in his application for membership in Dixie. The application provides that Dixie is not liable for service interruptions caused by accidents, breakdowns, Acts of God or other acts or conditions reasonably beyond the control of Dixie. The handbook requires the consumer (Hines) “to provide adequate overcurrent protection in each phase of all motor installations.”
The overcurrent condition was precipitated by a green tree limb falling across the wires of a three phase electrical transmission system belonging to Dixie. This resulted in a short circuit which burned out a jumper some three miles from the fallen tree limb, which in turn caused a single phase outage at plaintiff’s motel resulting in the loss of 85 compressors located on the consumer’s side of the service. A “jumper” is a piece of electrical wire manufactured by a third party which is used to tie in one wire terminating at a pole to another wire originating at the same pole.
In advancing the strict liability theory, counsel for plaintiff directs the court’s attention to Civil Code Article 2317 and the *1205 case of Loescher v. Parr, 324 So.2d 441 (La.1975). Plaintiff argues that since the juniper was in the control or custody of Dixie, it should be liable for the damages incurred by the plaintiff. Article 2317 of the Civil Code reads in part as follows:
“We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody....”
Our Supreme Court in the Loescher case, supra, pointed out three methods of a defendant escaping this liability.
“This jurisprudence recognizes that the injured person must prove the vice (i. e., unreasonable risk of injury to another) in the person or thing whose act causes the damage, and that the damage resulted from this vice. Once this is proved, the owner or guardian responsible for the person or thing can escape liability only if he shows the harm was caused by the fault of the victim, by the fault of a third person, or by an irresistible force.” Loescher, supra, pp. 446-447.
Both parties during the course of this litigation entered into the following written stipulation:
“IT IS STIPULATED by and between counsel for the parties that on May 26, 1976, a green limb fell from a tree located on Lot 144, Camelot Subdivision, Second Filing, East Baton Rouge Parish, Louisiana, privately owned by one not a party to this suit but on a servitude of Dixie Electric Membership Corporation, and came in contact with a three phase, four wire electric distribution line owned by Dixie Electric Membership Corporation.”
Plaintiff contends that the burning of the “jumper” in Dixie’s care, custody or “garde” caused the damages he sustained. However, as found by the trial court, there is no evidence of record which would indicate that the “jumper” contained any vice or was faulty in any manner. To the contrary, the evidence establishes that an outside source, a green tree limb from a tree not owned or reasonably controlled by Dixie, caused the short circuit condition which created an overload resulting in the burnt “jumper.” Plaintiff’s failure to prove a vice or defect in the “jumper” is fatal to his claim under the strict liability theory. Additionally, the damages were not caused by the “jumper” but by the tree limb which was not in the custody of Dixie.
In regards to plaintiff’s contention that portions of the Membership Contract and Bylaws were ambiguous, the trial court was correct in construing the entire document in finding no ambiguities. Texaco, Inc. v. Vermilion Parish School Board, 244 La. 408, 152 So.2d 541 (1963) and Solomon v. Hickman, 219 So.2d 330 (La.App. 1st Cir. 1969). The plaintiff is arguing that the word “adequate” is ambiguous in one provision of the contract relating to providing adequate overcurrent protection. From a reading of the entire contract, the trial court reached the conclusion that “it is apparent that the whole thrust of the agreement is that the consumer is responsible for its electrical equipment on its side of the service.” We agree with the trial court’s conclusion.
The final argument that plaintiff makes is a twofold negligence theory on the part of Dixie: first, that Dixie was negligent in failing to warn its customers of possible damages to motors caused by single phasing; secondly, the jumper was defective, thus constituting a dangerous instrumentality, which required Dixie to instruct its users of the hazards of its use.
With the vast different needs of each customer, the duty of an electric company to warn of every possible type of condition would be insurmountable. The different effects of an outage were well demonstrated in the instant ease by the failure of the single phase motors and the lack of damage to the three phase motors. Besides, the customer under the Membership Contract and Bylaws with Dixie Electric is responsible for all of the electric equipment on its side of the line. It is incumbent on the customer, by terms of this membership contract, (in this case Hines) to ascertain *1206 whether his equipment meets the conditions imposed upon him by the agreement.
The second aspect of the plaintiff’s negligence theory is that Dixie’s “jumper” was defective because it burned during “normal use” and it was therefore a potentially dangerous instrumentality requiring Dixie, as its manufacturer, to instruct reasonably foreseeable users of the product with regard to its safe use, or to warn against hazards of use, citing Amco Und. of Audubon Ins. Co. v. American R. & S. Corp., 329 So.2d 501 (La.App. 1st Cir. 1976); Weber v. Fidelity & Casualty Insurance Co. of N. Y., 259 La. 599, 250 So.2d 754 (1971). This argument is tenuous at best for a number of reasons: the “jumper” was not defective; the “jumper” burned during an overload condition, not under “normal use”; Dixie was not the manufacturer of the “jumper”; and plaintiff was not using the “jumper” as a product when the damages occurred. All of these circumstances distinguish this case from the cases relied on by the plaintiff.
As earlier stated, the plaintiff’s negligence theory is based on the premise that the failure of the “jumper” caused the damages complained of. As has been pointed out, the cause of the overcurrent was the limb falling on the lines which Dixie had no control over. The trial court held that “. . . negligence was not proved by a preponderance of the evidence in this case.” We agree.
For these reasons, the judgment of the trial court is affirmed at appellant’s cost.
AFFIRMED.