BYRNES, Judge.
This is an appeal from a ruling in the trial court dismissing appellants’ claim for *1203 damages against the State of Louisiana for injuries sustained when their motorcycle went out of control on Interstate 10 in New Orleans and crashed into an energite crash barrier.[1]
The accident occurred at approximately 2:30 in the afternoon on a clear sunny day. Appellants were on a Honda 750 motorcycle proceeding down the interstate at 35 to 40 miles per hour. The section of interstate where the accident occurred is a two lane exit ramp. At the point of the collision there is an exit to Airline Highway from the right lane. The main exit lane continues past the Airline exit to the Carrollton Avenue exit. The motorcycle on which the appellants were riding went into a skid at the Airline exit and struck an energite crash barrier, causing injuries to the riders. Appellants maintain that, due to the faulty condition of the energite crash barriers, there was sand and pea gravel on the interstate which caused the motorcycle to skid out of control. They further maintain that they struck a broken portion of the energite barrier which extended into the roadway, further compounding their injuries. There is a conflict between the testimony given at trial and that given in appellants’ depositions as to whether or not there was actually gravel on the highway. There is further conflict as to when the appellants noticed that the barrels were broken and in disrepair. What the facts do bear out however, is that the motorcycle went into a skid and struck part of the energite crash barriers.
Appellant’s first contention is that the trial court erred in not finding that the defendant, State of Louisiana, breached its duty to maintain a safe highway under the concept of legal fault set forth in La.C.C. Art. 2317. Appellants rely on the Supreme Court’s pronouncement in Shipp v. The City of Alexandria, 395 So.2d 727 (La.1981) as setting forth the elements of proof in an Art. 2317 claim. The court in Shipp, citing Jones v. City of Baton Rouge, 388 So.2d 737 (La.1978) and Loescher v. Parr, 324 So.2d 441 (La.1976) stated:
“An injured party seeking damages under Art. 2317 need not prove negligence, that is, that any particular act or omission on the part of the defendant caused his injuries. He must only prove that the thing which caused the damage was in the care or custody of the defendant, that the thing had a vice or defect, that is, that it occasioned an unreasonable risk of injury to another and that his injury was caused by the defect. Once these elements are proven, the custodian can escape liability only by showing that the harm was caused by the fault of the victim, by the fault of a third person, or by an irresistible force.” (Citations omitted)
The record shows that the State was the custodian of the energite crash barriers and was responsible for their upkeep. In order to find liability under Art. 2317 it must be shown that the cause of the accident was loose sand and pea gravel on the road, which came from a defective crash barrier.
The threshold question is what caused the motorcycle to go out of control. In deposition the appellants and witnesses stated that they did not know what caused the motorcycle to shimmy and go into a skid. At trial they testified that they saw sand and pea gravel on the highway before going into the skid and this is what caused them to loose control. The investigating officer testified that he saw sand on the highway from the point where the motorcycle hit the barrels forward, but did not note whether there was any sand or pea gravel on the roadway before the point of collision. Three witnesses, the two appellants and Mark Demoruelle, who was following appellants when the accident occurred, each testified that a broken piece of barrel was protruding twelve to fourteen inches into the traveled portion of the highway. Although the trial judge did not give reasons for his judgment he obviously felt the appellants had not carried their burden of *1204 proof that the skid was caused by debris on the highway attributable to a vice or defect in a thing within the custody of the State. An appellate court will not overturn such a determination absent a showing of manifest error. Arceneaux v. Dominique, 365 So.2d 1330 (La.1979). Having reviewed the record in this case, we find ample support for the trial court’s conclusion and therefore affirm.
Appellants’ second contention is that the State of Louisiana breached its duty under Civil Code Articles 2315 and 2316 in not providing adequate inspections of the crash barriers. We find no merit in this specification of error. Appellants rely on the testimony given by Nathan M. Childs, Jr., who was the district maintenance engineer for the Department of Transportation at the time of the accident. We quote the germane portion of his testimony here.
Q. Isn’t it also true that your department in the period of time we are speaking of had no scheduled inspection of any of these crash barriers; isn’t that true?
A. We had no scheduled documents, no, sir.
Q. As a matter of fact, your department depended upon complaints from civilians to some extent at that time; Isn’t that true?
A. To some extent, yes.
Q. You further depended upon complaints from the Police Department when there was an accident in an installation area to report any damaged module: would that be correct?
A. Yes sir.”
Appellee’s expert, Robert Paul Roth, Jr., then testified regarding the State’s inspection schedules. Mr. Roth had been with the Department since 1971 and replaced Mr. Childs as District Maintenance Engineer in 1979. When asked if Mr. Childs’ statement that no basic inspections at regular intervals were conducted in April of 1977 was correct, he replied:
“I would say that’s incorrect in that the roads are inspected or were inspected even at that time on a regular basis by the maintenance superintendent. Whether there was a regular inspection, by the crews that actually repaired them, I wouldn’t know.
Q. He said that they would inspect the roads, but have no route to go over and no specific times. Would that be correct?
A. That is correct. The superintendent is not required to travel a particular section of road in a particular period of time. That’s left to his discretion. The guideline is he is to cover all the roads within a two week period. The superintendent travels certain portions of road more frequently than others due to his knowledge of the road and which require repair more than others.
Q. Would it be fair to say you would like him to cover the roads every two weeks but many times he doesn’t every two weeks; Is that true?
A. Not in the last year, no.
Q. You don’t know what the condition was in 1977?
A. No.”
From this testimony the trial judge concluded that the State had a periodic inspection schedule adequate to show due care on its part and thus rebut the inference that it was negligent in maintaining the crash barriers. This conclusion was based on his evaluation of the credibility of the testimony and the weight he felt it should be given. This court will not overturn such determinations absent a showing of manifest error. Arceneaux v. Dominique, supra.
The judgment of the trial court is affirmed with all cost of the appeal to be assessed to appellants.
AFFIRMED.

. The energite crash barrier is a series of yellow plastic barrels placed together at highway exits to help minimize the severity of collisions.