BOWES, Judge.
Plaintiffs, who were the victims of a rear-end collision, appeal the judgment of the trial court alleging that insufficient damages were awarded and that the jury failed to apply strict liability to two of the defendants.
FACTS
On August 12, 1976, at approximately 9:40 a. m., a 1975 Ford automobile, owned by Davis J. Naquin and being operated by his wife, Maggie S. Naquin, with Marshall N. Scott as a passenger, was proceeding in the right east bound lane of U. S. Highway # 90, approximately one hundred (100) feet west of the intersection of Butler Drive in Avondale, La. At the same time, a 1973 Cadillac Fleetwood automobile, owned by defendant, Estelle J. Wilson Mortuary, Inc., and being operated by employee, Daniel J. Copelin, Sr., was proceeding in the left east bound lane of U. S. Highway # 90. A collision ensued between the two vehicles when the latter vehicle, owned by Estelle J. Wilson, struck the Naquin vehicle in the left rear as it was stopped for a traffic signal.
Immediately prior to the collision, there was a failure of the steering mechanism of the vehicle driven by Copelin. On June 22, 1976 (approximately one and one-half months prior to the accident) and pursuant to an agreement with Estelle J. Wilson Mortuary, Inc., Simpson Super Service, Inc., had performed certain repairs on the Wilson vehicle. These repairs included extensive overhaul of the steering mechanism for which Simpson Super Service, Inc. was paid a total of $148.40, and which repairs were improperly performed, resulting in the sudden failure of the steering mechanism at the time the accident occurred.
David J. Naquin, as owner of the Ford vehicle, Maggie Naquin, his wife and operator, and Marshall N. Scott, passenger, filed the suit in the 24th Judicial District Court for the Parish of Jefferson, against defendants, General Accident Fire and Life Assurance Corporation, Ltd., its insured, Estelle J. Wilson Mortuary, Inc., owner of the vehicle; Daniel J. Copelin, Sr., driver, and Simpson Super Service, Inc. As a result of the same accident, Southern Farm Bureau Casualty Insurance Company, the collision insurer of the automobile owned by Davis J. Naquin, filed suit against Estelle J. Wilson Mortuary, Inc. Southern was subrogated to the rights of its insured, to whom they had paid $1,041.16 for damage to the Na-quin vehicle under the terms of its policy provisions.
These suits were consolidated and tried before a jury with the Honorable Alvin Rudy Eason presiding. The jury returned a verdict as follows:
Defendants, Daniel J. Copelin, Sr., and Estelle J. Wilson Mortuary, Inc. were not negligent; defendant, Simpson Super Service, Inc., was negligent, and such negligence was the proximate cause of Maggie Naquin’s injuries. The jury awarded $314.50 to compensate Maggie Naquin for her damages, against Simpson Super Service, Inc. The jury further determined that the negligence of Simpson Super Service, Inc. was not the proximate cause of the injuries alleged by Marshall N. Scott. On July 13,1977, judgment was entered pursuant to the jury verdict and the defendants, Daniel J. Copelin, Sr. and Estelle J. Wilson Mortuary, Inc. were dismissed from the suit. Further, judgment was rendered in favor of Southern Farm Bureau Casualty Insurance Company and against Simpson *1262 Super Service, Inc. in the amount of $1,041.61. No award was made to Davis Naquin, as owner of the Ford vehicle.
The plaintiffs, Davis J. Naquin, Maggie Naquin, and Marshall N. Scott, have appealed this decision alleging two assignments of error.
LIABILITY
The plaintiffs allege error as to the application of L.S.A.C.C.Art. 2317 (strict liability) to defendants, Daniel J. Copelin, Sr. and Estelle J. Wilson Mortuary, Inc. They contend that Estelle J. Wilson Mortuary, Inc. and Daniel J. Copelin, Sr. are strictly liable, under Article 2317, as owner/custodian, respectively, for the damages occasioned by an unreasonable risk of injury to the plaintiffs from the defective Wilson vehicle. However, it is well settled that such strict liability for the damage caused by the defect existing in the thing owned or under the custody of an individual cannot be imposed if the harm was caused by the fault of a third person. Arceneaux v. Dominigue, 365 So.2d 1330 (La.1978); Loescher v. Parr, 324 So.2d 441 (La.1975).
In Arceneaux v. Dominigue, supra, the Louisiana Supreme Court quoting the leading case of Loescher v. Parr, supra, stated:
"... the owner or guardian responsible for the person or thing can escape liability only if he shows the harm was caused by the fault of the victim, by the fault of a third person, or by an irresistible force.” (Emphasis supplied).
There, the Court held that the owner was not liable under Civil Code Article 2317 for the damage caused by his vehicle where the record showed that the accident in question was caused by the driver’s negligence and, therefore, the owner had sustained his burden of proving that the harm was caused by the fault of a third person.
Since the Loescher decision, this has been the most widely recognized defense to the application of Article 2317 in automobile accident cases. This trend was exemplified by the case of Panek v. Gulf Insurance Company, 341 So.2d 46 (La.App. 3rd Cir. 1976), wherein the Court found that the cause of an accident in which a wheel on a truck had become dislodged, thus striking another vehicle, was due to the prior owner’s (Fruehauf) failure to properly tighten the bolt located on the wheel. Because the damage resulted from the fault of a third person, the owner of the truck (Badcaw-Gulf) was not strictly liable under Article 2317.
In the case before us, the testimony clearly reveals that part of the steering mechanism, specifically the idler arm, on the Wilson vehicle suddenly and without warning failed, causing complete loss of control of the vehicle, and the ensuing collision between the Wilson and Naquin vehicles. In addition, the record clearly reflects that repair work was performed by Simpson Super Service, Inc. in the steering mechanism of the Wilson vehicle not long before the accident, such repairs consisting of work on the idler arm assembly.
This substantial evidence supports the jury’s finding as to the negligence of Simpson Super Service, Inc., in repairing the steering mechanism of the Wilson vehicle. Further, the trial court has adjudged the defendant, Simpson Super Service, Inc., as having negligently performed these repairs on the Wilson vehicle, such negligence being the sole proximate cause of the accident and resulting injuries. In light of the evidence and testimony contained in the record, this finding by the jury cannot be overturned by this Court, and we find no reason to do so. Canter v. Koehring Co., 283 So.2d 716 (La.1973); Arceneaux v. Domingue, supra.
Therefore, in accordance with the above-cited decisions, Estelle J. Wilson Mortuary, Inc. and Daniel J. Copelin, Sr., cannot be held strictly liable under Civil Code Article 2317.
QUANTUM
Plaintiffs additionally contend that they were awarded insufficient damages for their injuries. Defendants argue and the record indicates, however, that there was a sufficient basis, throughout trial, for the jury to question the credibility of the plaintiffs.
*1263 The record reflects that one of the plaintiffs, Mrs. Maggie Naquin, saw a Dr. Spence of Houma a few days after the accident. Spence prescribed muscle relaxants on that occasion, but Mrs. Naquin did not return to his office for further treatments. Later, she decided to seek treatment from a chiropractor, Dr. Frank Mooring. It appears from the record that Dr. Mooring agreed to treat Mrs. Naquin and the other plaintiffs without payment until this lawsuit had reached a final settlement or payment of judgment. This would, in itself, form a reasonable basis for suspicion on the part of the jury concerning the credibility and motives of Dr. Mooring and the plaintiffs.
There were also numerous differences between Mrs. Naquin’s testimony at Court and testimony at her deposition. A section of the trial transcript reveals testimony by Mrs. Naquin that she had taken the muscle relaxants prescribed by Dr. Spence, going into detail with regard to the effect of those muscle relaxants. In previous testimony, she emphatically stated that she had not taken any of the muscle relaxants. Dr. Mooring also contradicted the plaintiff’s testimony at trial by confirming that Mrs. Naquin had advised him that she did not even have Dr. Spence’s prescription for muscle relaxants filled by any pharmacy.
The trial transcript also reveals testimony by Mrs. Naquin that she had visited Dr. Mooring before the accident for adjustments and for relaxation. During later testimony at trial, she specifically denied ever having any trouble with her legs, back or hips before this accident. This testimony was contradicted by Mrs. Naquin’s own treating physician, Dr. Mooring, when he admitted that prior to the accident in this lawsuit, he had treated Mrs. Naquin for a matter of months with regard to complaints about her back and hips. Dr. Mooring further contradicted Mrs. Naquin’s testimony when he testified that he had treated her for violent headaches in 1972 and for low back pain and pain in the legs in 1974.
The only medical doctor consulted by Mrs. Naquin was Dr. Charles Spence. He testified at trial that his diagnosis of Mrs. Naquin was “muscle irritation.” Dr. Spence was not even asked by the plaintiff’s counsel whether the muscle irritation was related to the accident made the basis of this law suit. The plaintiff’s own treating physician, Dr. Mooring, stated that he had found degenerative changes in Mrs. Naquin’s neck on August 16, 1976, four days after the accident. He admitted that such a degenerative change could not have been the result of this particular accident, and would definitely have pre-existed the accident made the basis of this law suit.
With regard to plaintiff, Marshall Scott, there was testimony by him during trial that he had gone to Dr. Spence’s office with the intention of being treated by him, but had decided he didn’t want to wait any longer, and went outside and waited for his sister in the car. The only medical doctor seen by him was Dr. C. V. Guillermo, Jr., whose report was entered into evidence. Dr. Guillermo saw Mr. Scott three months after the accident. Dr. Guillermo did not give any diagnosis, but felt that the examination of his eyes and nervous system were “unremarkable.” There is no testimony whatsoever or indication in this report with regard to any opinion of Dr. Guillermo to the effect that any injuries complained of by Marshall Scott were related to the accident made the basis of plaintiff’s law suit. Mr. Scott’s testimony was to the effect that he had been out of work for some 15 years as a result of an accident wherein he sustained massive skull and neck injuries. At trial, he testified that he had been on Social Security Disability for this period of time. There was more than enough reason for the jury to believe that Mr. Scott had been uninjured in the accident made the basis of this law suit.
Concerning the $100.00 deductible claimed as property damage on behalf of Davis Naquin, a reading of the transcript by Davis Naquin leaves no doubt as to the fact that the jury had ample basis to make a determination that Mr. Naquin had actually made a profit with regard to the repairing of his car, and had not sustained *1264 any loss at all. Mr. Naquin testified that he was reimbursed $1,141.61 for the damage to his car from his insurance company. He admitted, however, that it only cost him some $800.00 to repair the car. This left him a profit of over $200.00 on his insurance settlement with Southern Farm Bureau Casualty Insurance Company.
The law of the State of Louisiana with regard to the consideration by Courts of Appeal of the adequacy or inadequacy of any award has in the last few years become more clear and specific. The Supreme Court Case of Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977) stated that:
“Before a Court of Appeal can disturb an award made by Trial Court the record must clearly reveal that the trier of fact abused its discretion in making its award. Only after making the finding that the record supports the fact that the lower court abused its discretion can the Appellate Court disturb the award.”
In the case of Reck v. Stevens, 373 So.2d 498 (La.1979), the Supreme Court stated:
“Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to individual circumstances of the present case. Only after an analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is excessive or inadequate.”
An earlier decision by the Supreme Court, which has been much quoted in the jurisprudence, is the case of Canter v. Koehring Company, 283 So.2d 716 (La.1973). In that case, the Supreme Court ruled that:
“When there is evidence before the trier of fact which, upon its reasonable evaluation of creditability, furnishes a reasonable factual basis for the trial court’s finding, on review the Appellate Court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of creditability and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principal of review is based not only upon the trial courts better capacity to evaluate live witnesses (as compared with the Appellate Courts access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.”
After reviewing the transcripts, particularly the testimony of Maggie Naquin, Marshall Scott, Davis Naquin and Dr. Mooring, it becomes evident that there were substantial differences between the testimony of those witnesses, and even differences between testimony at trial and testimony in previous depositions, by some of the witnesses. The credibility of the plaintiffs was unquestionably at issue, and the verdict of the jury reflected it’s belief that the testimony of the plaintiffs was not credible and unworthy of belief. We believe that there was, indeed, a more than sufficient basis in the record for the jury’s determination of lack of credibility on the part of the plaintiffs. For this reason, we feel the jury did not abuse its discretion in regard to quantum of damages.
For the above reasons, the judgment of the trial court as to liability and damages is hereby affirmed.
AFFIRMED.