KING, Judge.
The sole issue presented by this appeal is whether the trial judge was correct in finding defendant liable for damages to plaintiff’s property.
Linda F. Sipco (hereinafter plaintiff) brought suit against Concordia Electric Cooperative, Inc. (hereinafter defendant) seeking recovery of property damages resulting from defendant’s failure to respond to her service request to either cut a dead tree on plaintiff’s property or to lower their electric utility lines so the dead tree could be removed by her.
After a trial on the merits, judgment was rendered for plaintiff and oral reasons for judgment were given by the trial court. A formal written judgment was signed. Defendant timely appeals. We affirm.
FACTS
Plaintiff and her husband moved from Illinois to the Rogers area of LaSalle Parish, Louisiana in mid-March of 1988. Upon inspection of her yard, plaintiff discovered a large dead hickory tree that needed to be removed to prevent it from falling and causing damage to plaintiff’s garage and the electric utility lines that were near the tree. However, because the tree was dangerously close to two electric utility lines, the tree could not be safely removed by plaintiff until the lines were lowered by defendant.
On March 29, 1988, plaintiff informed a representative of defendant of the problem and requested that defendant either remove the tree or lower their electric utility lines so plaintiff could have the tree removed. Defendant did not respond to plaintiff’s request.
On April 4, 1988, plaintiff went to defendant’s place of business and filled out a work order requesting that defendant take action in connection with the problem. After no response was made by defendant, plaintiff telephoned defendant on April 13, 1988 inquiring about the removal of the tree or the lowering of the utility lines. Defendant still did not respond to plaintiff’s request
On May 3, 1988, plaintiff again went to defendant’s office to inquire about the status of the work order that she had filled out on April 4, 1988. Plaintiff discovered that the work order was still pinned to defendant’s bulletin board and had not been moved from where it was located a month earlier. Again, defendant took no action on plaintiff’s request. On May 24, 1988, plaintiff again telephoned defendant concerning the problem about the removal of the dead tree. Defendant still took no action. On June 7, 1988, plaintiff again went to defendant’s office to inquire what action had been taken on the problem and was informed that the work order had been *849 sent to Jonesville and the problem would be taken care of from there.
The next day, June 8, 1988, two representatives of defendant inspected the dead tree on plaintiffs property, but took no action as to the removal of the tree or the lowering of the electric utility lines. Approximately two days later, on the afternoon of June 10, 1988, the dead tree fell on plaintiffs garage causing damages in the amount of $1,448.75. The whole amount was covered by plaintiffs homeowner’s insurance policy except for the $250.00 deductible under the policy.
Plaintiff made a written request to defendant for payment of the $250.00 not paid by her insurer because defendant’s negligent delay in taking action had resulted in the damage to her property. Defendant refused to pay plaintiff the $250.00 and took the position that the damages caused by the falling tree were solely plaintiff’s responsibility.
Plaintiff filed suit against defendant for $250.00 in damages due to defendant’s negligence by its unreasonable delay in responding to plaintiff’s service request. Defendant filed an answer denying liability. After a trial on the merits, the trial court rendered judgment in favor of plaintiff and against defendant. The trial judge gave oral reasons for judgment in which he stated that defendant’s delay in responding to plaintiff’s service request was a breach of defendant’s duty and, thus, defendant was negligent and liable for plaintiff’s damages. We adopt the trial judge’s findings of fact and oral reasons for judgment and attach them as an Appendix to this opinion. A formal written judgment was signed on May 24, 1989.
Defendant timely appeals asserting that the trial judge erred in concluding that defendant was negligent by its unreasonable delay in responding to plaintiff’s service requests and, thus, erred in finding defendant was liable for the damages that resulted from the tree falling on plaintiff’s garage. The trial judge found that the defendant did not have a legal duty to remove the tree, but rather to lower its electrical utility lines, within a reasonable time after being requested to do so by plaintiff, so that plaintiff could remove the dead tree. The trial judge found defendant’s unreasonable delay in performing its legal duty was negligence which made it liable for plaintiff’s damages. We affirm the trial court’s judgment.
LAW
The Louisiana Supreme Court has held that one can be liable for the damage caused by a defective tree located on one’s own property. Loescher v. Parr, 324 So.2d 441 (La.1975). Thus, defendant argues that, because the tree that caused the damage to plaintiff’s garage was located on plaintiff’s property, defendant did not have a legal duty to remove the defective tree, and is therefore not responsible for the damage caused by the fallen tree.
Defendant correctly argues that it had no legal duty to remove the tree. Nevertheless, defendant incorrectly assumes that, because it did not have a legal duty to remove the tree, it had no duty to plaintiff at all. Defendant did have a legal duty to respond to plaintiff’s service requests within a reasonable amount of time to allow the plaintiff to remove the dead tree. Because of the risk of an accident or electrocution, plaintiff was unable to remove the dead tree until defendant lowered the utility lines as they were located dangerously close to the dead tree.
In Dixon v. Northeast Louisiana Power Co-op, 524 So.2d 35 (La.App. 2 Cir.1988), writ den., 526 So.2d 809 (La.1988), the Court said:
“If it should be reasonably anticipated that persons may come into contact with electric lines, the operator of those lines is required to insulate them, or to give adequate warning of the danger, or to take other proper and reasonable precautions to prevent injury. Simon v. Southwest Louisiana Electric Membership Corporation, 390 So.2d 1265 (La.1980).” Dixon v. Northeast Louisiana Power Co-op, 524 So.2d 35, at page 41 (La.App. 2 Cir.1988), writ den., 526 So.2d 809 (La.1988).
*850 The Louisiana Supreme Court has found that “when the power company realizes or should realize that the transmission of electricity through its line presents an unreasonable risk of causing physical harm to another, it is under a duty to exercise reasonable care to prevent the risk from taking effect.” Levi v. S.W. La. Elec. Membership Co-op., 542 So.2d 1081, at page 1084 (La.1989). The Supreme Court further stated that the power company has a duty to recognize a hazard by saying:
“A power company is required to recognize that its conduct involves a risk of causing harm to another if a reasonable person would do so while exercising such attention, perception of the circumstances, memory, knowledge of other pertinent matters, intelligence and judgment as a reasonable person would have.” Levi v. S.W. La. Elec. Membership Co-op., 542 So.2d 1081, at page 1084 (La.1989).
We do not find that the trial court was clearly wrong or manifestly in error in finding that the defendant was negligent and breached its legal duty to plaintiff by unreasonable delay in response to plaintiff’s service requests. Defendant’s postponement of the lowering of the electric utility lines that ran next to the dead tree unreasonably hindered plaintiff’s removal of the dead tree and ultimately led to the damages to plaintiff’s property.
For these reasons, the judgment of the trial court is affirmed. All costs of this appeal are taxed to defendant-appellant.
AFFIRMED.
APPENDIX
COURT’S RULING
BY THE COURT:
Basically the court finds this to be the factual situation: that Mrs. Sipco and her husband purchased their property sometime in early 1988, that they moved from Illinois into the Rogers area of LaSalle Parish sometime around the middle of March; that on March 29, 1988, Mrs. Sipco spoke to a Ms. Jenkins in the Concordia Electric office to try to have her tree cut and that the tree could not be cut until such time as the lines were moved. That there was, after that complaint was made that there was no response from Concordia Electric.
On April 4, 1988, Mrs. Sipco went to Concordia Electric, filled out a work order requesting that someone come down to in some manner, fashion or form take action to protect, to preclude and eliminate this situation as it existed at that time. The work order has not been presented by Con-cordia Electric so the court really does not know exactly what was on the work order.
Then on May 3, 1988, because no action had been taken by Concordia Electric, Mrs. Sipco came back to the Jena office, asked: what happened to the work order? only to discover that the work order was still on the bulletin board and had not been removed from where it was located the month before.
On May 24, 1988, she made a call to Concordia Electric concerning the problem. One June 7, 1988, she physically went back to the Concordia Electric office; she was told that all of the work orders had then been sent to Jonesville — and I take it at that time by Mr. Everett Mayo — that I guess the Jena office assumed that something had already been done but no Concor-dia Electric employees had been present at the Sipco home.
And on the very next day Mr. Whatley and Mr. Clark came to look at the tree. And that after they left no action was taken and two days later at approximately 4:20 p.m. the tree fell and landed almost square on the garage, causing damages in the amount of $1448.75, all of which was paid by insurance other than the $250 deductible.
The court finds that Mr. Chuck Whatley was one of the individuals who went to the scene on June 8, 1988 — and some of these dates I may have been giving as ’89 but all of them so far that I have been discussing all occurred in 1988 — that Mr. Whatley had been given a, what he referred to as a “right-of-way ticket” from Mr. Everett Mayo along with a number of other right- *851 of-way tickets, and that he went to the location, realized that the job was much too difficult for him to handle; that the tree was not of such a nature that he had the capacity or the facilities to take, take the tree down, and that in doing so he had a discussion with Mrs. Sipco, and in that discussion he suggested to her that he could drop the lines at any time that she could get a contractor in to cut the tree, and that as soon as the tree was cut they would reconnect the lines thereby eliminating the problem.
That to me seems to be a very obvious and easy way of curing the problem that was created by this tree. Unfortunately the tree fell two days later, before this could be accomplished causing the damage.
Mr. Whatley, the court finds, did exactly what he was supposed to in every way, shape and form as a service lineman. It’s his obligation to maintain the rights-of-way and that this tree, based upon the testimony of Mr. Lincecum, was not on the right-of-way because the right-of-way for a single phase line pursuant to their contract is a ten foot right-of-way on either side and that the tree physically is located further than ten foot on either side although some of the line might, some of the limbs may be hanging over or within the right-of-way period.
Mr. Whatley was very helpful to the court in that he suggested that clearly the procedure of his fellow workers is to work out what is best for the home owner and the company. He indicated to the court that Mrs. Sipco did in his conversation with her indicate to him that she was very concerned about the tree falling, and particularly about the tree falling in association with the wires. It should be noted that when the tree did fall it took the wires out with it when it went down.
Mr. Lincecum has testified that it is the policy of Concordia Electric to maintain the right-of-way on either side of the line ten foot, that Mr. Whatley complied with the company’s policy and procedure, and I believe that Mr. Whatley did.
Mr. Lincecum contends that because Concordia Electric maintains 2400 miles of primary lines that they have a great deal of difficulty with the small crew that they have getting around to these type of problems and working them out, and there are other matters more important that need to be taken care of first than matters such as this, and these matters are left to get to them as quickly as they possibly can; that delays such as this are not, they are in fact customary because of the small nature of the company. They can’t afford to have the type of equipment that might be necessary to handle these type of problems.
The business basis of priorities is the efficient delivery of electrical service, which includes therein the protection of human life.
All of that is found as fact and the court does find that as a practical matter Mr. Whatley in his position did exactly what he was supposed to. Mr. Lincecum has indicated to the court the company policy.
We’ve gone over a ton of material that really hasn’t been all that pertinent to this trial.
Mr. Lincecum, I would tell you, as I have listened to a number of other power cases; that every case I’ve ever heard you get the same testimony and that is: we have too many lines and we don’t have enough people to do them and we can’t handle it. And I agree that that’s probably the truth; you’ve probably got more than you know what to do with. The other side of that coin is: I have to agree very strongly with plaintiffs; that the most dangerous thing floating around here are those electrical lines. And I think Mr. Whatley was very correct and very proper and very truthful with me when he said: you can’t, although you have all of these disconnect switches and what-have-you, electricity is too unpredictable to say what’s going to happen when the lines go down.
I think if Concordia Electric has a priority system that is designed to take care of all of its rights-of-way and secondarily worry about things of this nature, then I think its priorities are completely out of order. I think Concordia Electric has a duty to *852 make sure that these type of difficulties are protected — to protect the public and protect the property damage, but more importantly, personal human life. I think that’s the most important thing we’re looking at.
I’ve seen enough cases where trees are damaged and just happen to fall without any degree of wind or anything else and they’re about as unpredictable as those lines that you have up there.
I think in this case the duty that was breached by Concordia Electric had nothing to do with the activity of Mr. Whatley; had nothing really as a practical matter to do with the, with the set basis that Concordia Electric contends that its policy is designed to protect from, but it had to do simply with the delays. And that is, if they had responded to Mrs. Sipco’s delays, that if that work order hadn’t got lost somewhere in the office for two months that Mr. What-ley would have gone out there and he would have told her exactly what he told her two days before the incident, and had he told her that two months instead of two days, then in all probability this incident would not have happened.
I don’t think Concordia Electric has an obligation to cut that tree down for Mr. and Mrs. Sipco; I think they do have an obligation to get those lines out of the way so that tree can be cut down safely just as Mr. Whatley indicated that he was willing to do for her.
I find no fault in Mr. Whatley. The fault I find in this, the breach of duty I find in this is the inordinate delay between March 29, 1988, and June 8, 1988, the length of time necessary for Concordia Electric to respond, not only to a request but a request that was made perhaps five, at least five perhaps six times.
That being the case I find that Concordia Electric is liable for the loss associated with this particular case, and that’s the $250 deductible. Interest from date of legal demand but all cost of court.
Judgment to that effect will be signed upon presentation.
ORAL REASONS FOR JUDGMENT rendered May 15, 1989.