LEAR, Judge.
This matter arose as a suit by an employee against the executive officers of plaintiff’s employer, Bulk Transport, Inc. .
*114 The evidence shows that appellant was driving a tractor-trailer in the early morning hours of October 11, 1973, when he was involved in a head-on collision with an automobile which had swerved into plaintiff’s traffic lane. The driver of the automobile was killed and plaintiff suffered severe and permanently disabling injuries.
The basis of the claim is that the executive officers permitted the front bumper of the tractor to be shortened, which resulted in an exposure of the front wheels of the tractor. The left front wheel of the tractor was .separated from the chassis as a result of the collision, causing the driver to lose control of the vehicle.
The trial judge, in a well reasoned opinion, held as follows:
“Plaintiff’s suit is based on the alleged breach of statutory and non-statutory duties owed him by the defendants. Specifically, plaintiff was assigned an eighteen-wheeler, tractor-trailer rig to drive in the course of his employment. In the early morning hours of October 11, 1973 he was traveling west on U.S. Highway 190 at the same time a 1966 Pontiac driven by Joseph Jules Fontenot was traveling in an easterly direction. That portion of the highway, at the time, was only two lanes because of bridge construction. At a point approximately eight-tenths mile east of Krotz Springs, the Fontenot vehicle pulled into the westbound lane, approximately into the middle of the lane, causing a head-on collision. The front of the Fontenot automobile struck the left front of the truck causing the left front wheel of the truck to separate. The Fontenot vehicle came to rest on the south shoulder about twenty-five feet from the point of collision. The truck traveled approximately two hundred thirty feet down an embankment to a point southwest of the point of collision. The tractor and trailer were separated and both were badly twisted and mangled. Investigating officers commented that this was the most extensively damaged tractor-trailer they had ever seen. Fontenot was killed as a result of the accident and Plaintiff Odis Roberts suffered serious and permanently disabling injuries.
“The basis of liability urged by the plaintiff is that these Defendants had removed each end of the front bumper that extended beyond the frame of the tractor so as to leave exposed the two front wheels. Plaintiff urges that the absence of the bumper in front of the left front wheel was the cause of the wheel being knocked off. Plaintiff alleges that the truck overturned as a result of the missing wheel, which in turn caused plaintiff’s injuries or, at least, caused them to be much more serious than they would otherwise have been.
“Plaintiff’s counsel presents an extensive review of the jurisprudence establishing executive officer liability and urges that these defendants should be held liable for plaintiff’s injuries because of an affirmative statutory duty to furnish employees a safe place to work with safe equipment (R.S. 23:13). Plaintiff further urges that the cutting of the front bumper was in violation of R.S. 32:53 which provides in pertinent part as follows:
“ ‘A. No person shall drive or move, nor cause or knowingly permit any vehicle owned or controlled by him to be driven or moved, on any highway of this state, at any time, any vehicle of combination of vehicles which is in such unsafe condition as to endanger any person or property, or which does not contain those parts or is not at all times equipped with such lamps and other equipment, in proper condition and adjustment, as required in this Chapter, or which is constructed or equipped in any manner in violation of this Chapter, and no person shall do any act forbidden or fail to perform any act required under this Chapter.’
“Plaintiff’s employer, Bulk Transport, Inc., had been designated as a motor vehicle inspection station by the Department of Public Safety for the purpose of inspecting its own vehicles. Prior to this accident all inspection stations including *115 Bulk Transport, Inc., had recieved (sic) a bulletin identified as MVI Advisory Sheet No. 10, which instructed inspectors to reject vehicles if:
“ ‘5. Bumper(s) removed from vehicles originally equipped with bumper(s)
“ ‘6. Rebuilt or modified bumper(s) not equivalent or original bumper(s).’
“These same instructions were contained in the official inspection manual furnished Bulk and were likewise contained as items 2 and 3 on an official inspection proceedure (sic) chart printed on a poster which was displayed on the wall at the Port Allen terminal of Bulk at all pertinent times.
“Plaintiff also asserts that the defendant should be liable under the doctrine of Loescher vs. Parr 324 So.2d 441. The Court finds the doctrine of Loescher inapplicable to these facts. Therefore, discussion of the remaining reasons for liability is indicated.
“In all of the jurisprudence reviewed by the Court, executive officer liability was founded on accidents resulting from unsafe equipment or conditions where the executive officer either knew or should have known that the conditions or equipment were unsafe and failed to correct them. The conduct of these defendants must be judged by what they knew or should have known at the time the bumpers were cut, which was several months prior to the accident. Mr. Heath, the safety manager, made a recommendation to Mr. Bridgewater, the terminal manager, to cut the bumper. He. had both heard and read of accidents which were believed to have been caused by full length bumpers being bent against the front wheels, causing drivers to be unable to control the truck after collision.
“Plaintiff faults the defendants for not investigating more extensively. It is true that the defendants did not seek an outside professional opinion nor research the matter extensively. Evidence indicates to the Court that such an investigation would have revealed nothing that the defendants did not already know and in good faith believe, namely, .that the shorter bumpers were safer. What an investigation would have revealed was the beginning of a controversy in the trucking industry as to the merits and demerits of short bumpers versus long bumpers. Mr. Heath is an active member of several state and national safety associations and testified that the controversy still exists and that the subject had been placed on the agenda of a meeting to be held in Kansas City.
“Significantly, there was no evidence offered that shortened bumpers had caused or contributed to any other accidents? The plaintiff did offer evidence that the short bumpers which can be ordered from the factory are not quite as short as the bumper in this case and are more substantial. The evidence is equally convincing that there is no bumper designed for highway use which could, with any degree of certainty, protect a driver in a head-on collision with a combined speed of approximately eighty miles per hour.
“Therefore, the Court finds that the decision made to cut the bumpers was a correct decision and one which these defendants had no reasons to believe would not further insure the safety of the drivers.
“No violation of R.S. 32:53 is found because of the fact that the bumpers are not found to be unsafe, per se, and because of the further fact that the Court finds no requirement in Title 32 that trucks be equipped with any bumper. The regulation of the Department of Public Safety is not violated for the reason that the bumpers after being cut were at least equivalent to or superior to the factory installed ones.
“The Court was unable to determine what the enforcement goal of the Department of Public Safety was, except to prevent any alteration or modification whatsoever. As an example of this rather pointless enforcement, Mr. Jack Lewis who was with the Vehicle Inspection Division from 1971 to 1975 in the New Orleans area, was asked what he would *116 do when faced with one truck with a short bumper installed by the factory and another truck with a short bumper that had been cut off by the owner. His reply was that he would pass the one which came from the factory and reject the one cut off by the owner. He further testified rejections were automatic in all cases where there had been an alteration. Obviously this is not what the regulation prohibits. The key word is ‘equivalent.’ There is no prohibition against alterations or modification so long as the altered or modified bumper is at least equivalent to the original. Plaintiffs have*- not sustained the burden of showing that these cut-off bumpers were not equivalent. If indeed the evidence preponderates, it does so in favor of the fact that the cut-off bumpers are generally safer.
“Assuming, arguendo, that the Court is in error with regard to its findings and that the defendants are guilty of a violation of a statutory or non-statutory duty to the plaintiff, the issue of causation has not been proved by a preponderance of the evidence. The plaintiff in this ease has the burden of showing not only that the shortened bumper rendered the damage to the truck more severe, but also that this shortened bumper was the proximate cause of plaintiff’s injuries. A finding of causation as to either of these matters involves rather obvious speculation and a ‘hindsight’ reconstruction to arrive at a version of the facts which is not supported by the evidence. The Court does not feel that an extensive review of the evidence as to causation is necessary. However, one example of the difficulty involved relative to the causation factor is the evidence which indicates that since the truck bumper is considerably higher than the automobile bumper, that automobiles almost always go under trucks in head-on collisions. The expert testimony was further to the effect that the automobile bumper probably came in contact with the inside of the left front wheel of the truck at about the same time that the truck bumper came in contact with the soft metal portions of the front of the automobile. It is difficult to conclude that a bumper of any length would have prevented a significant force against the front wheel of the truck. Compounding the difficulties involved in the issue of causation from the plaintiff’s standpoint is the testimony that all of plaintiff’s injuries except probably the arm injury were suffered on initial impact and that, in accidents of this type, the entire contact between the vehicles takes place within a split second.
“The Court therefore concludes that the sole legal cause of this tragic accident was the negligence of Mr. Fontenot.”
The trial judge rendered judgment in favor of defendants and against plaintiff, dismissing plaintiff’s petition at plaintiff’s costs.
A careful reading of the record does not indicate manifest error or an abuse of discretion by the court.
Therefore, the judgment of the trial court is affirmed, appellant to pay all costs.
AFFIRMED.