ARMSTRONG, Judge.
Plaintiff, Earl Epps Jr., instituted this action seeking damages for injuries sustained in a fall from an allegedly defective step ladder. The accident occurred at St. Mary’s Academy School (“St. Mary’s”), which is owned and operated by defendant, Society of the Holy Family (the “Society”). Also named as a defendant was the Society’s insurer, U.S.F. & G. Insurance Company. Plaintiff now appeals from a trial court finding that the ladder did not present an unreasonable risk of harm.
On June 26, 1987, plaintiff was performing electrical work at St. Mary’s. He was assisting his brother-in-law, Fernand Cheri, a custodian at the school. The men were installing electrical outlets in several classrooms. Part of the work involved passing electrical wire behind suspended ceilings, requiring the use of an eight-foot aluminum step ladder owned by the school. Plaintiff was climbing the ladder, raising panels of the ceiling, and pulling the wire across. Two classrooms had been completed when plaintiff, sixty-five years old at the time, fell from the fourth or fifth step of the ladder as he was climbing up. As a result of the fall he fractured his pelvis.
Plaintiff testified that as he was going up the ladder he felt a twisting, shifting movement which caused him to lose his balance and fall. He stated that he frequently climbed ladders while doing carpentry and electrical work, and had never fallen. He admitted that he noticed nothing obvious about this ladder which would have alerted him to any danger.
The ladder in question was purchased by the school in 1965. It was twenty-two years old at the time of the accident and over the years several worn rivets had been replaced with bolts and nuts. Plaintiff submits that the slightly worn and oversized holes into which the bolts had been placed rendered the ladder structurally unstable and subject to the type of twisting which caused him to lose his balance and fall.
Plaintiff presented the testimony of Robert Lipp, qualified as an expert in the field of mechanical engineering. Lipp testified that he had examined the ladder and testified that the combination of the several loose bolts and nuts made for a ladder that was “less than the stiffness that you would want it to be.” It was his opinion that the ladder was defective in the sense that it wasn’t as stiff as it should have been, and that this deficiency created a danger to people using the ladder. Based upon the factual circumstances surrounding plaintiff’s fall, Lipp said that it was more probable than not that the looseness was a cause of the accident. That is, the looseness resulted in the ladder being unstable which in turn caused it to twist as plaintiff was climbing it.
Defendant presented the testimony of Fred H. Vanderbrook, also qualified as an expert in the field of mechanical engineering. Vanderbrook inspected the ladder and *1218 stated that it appeared to be in generally good condition. He said that he found no problem with the function of the ladder, though he admitted that the brace was not as tight as a new ladder would have been. It was his opinion that any looseness resulting from nuts and bolts being substituted for worn rivets, and the oversized worn rivet holes, were not defects which made the ladder dangerous to normal use. He opined that it was “extremely unlikely” that twisting of the ladder contributed to the accident.
The testimony of plaintiff and the principal of the school, Sister Mary Demetria, indicated that there had been no previous accidents involving the ladder. The ladder had been used by outside contractors doing work at the school, as well as teachers, nuns, and students. Sister Mary Demetria testified that as of the time of trial the ladder was still in use. In fact, there is evidence that plaintiffs brother-in-law used the ladder immediately after plaintiffs fall.
Based upon this evidence the trial court found that the ladder did not present an unreasonable risk of harm to others, and thus defendants were not liable.
In its reasons for judgment the trial court stated:
After [plaintiff] fell, he directed his brother-in-law to climb the same ladder and complete the third room.
By his first assignment of error plaintiff claims that the trial court erred in giving relevance to the above-mentioned fact, which he submits, was not substantiated by the record. The trial court obviously inferred this fact from plaintiff’s brother-in-law, Cheri’s, testimony. Cheri stated that after plaintiff fell plaintiff told him to, “go over and you complete this work, and I will tell you what to do.” Plaintiff had fallen as he was climbing the ladder to raise a ceiling tile and pass the electrical wire behind the ceiling. It is a reasonable inference that if Cheri did nothing more than complete what plaintiff was preparing to do when he fell, he would have had to use the ladder.
Moreover, the court questioned Cheri about what was done to complete the work. Cheri stated that one thing he had to do was connect the wires from an outlet box to a hot line. The court asked:
Q. Where was that connection made?
A. It was made in the hall where the hot line service was. You see, the hot wires came down the hallway.
Q. In the ceiling?
A. In the ceiling, yes. So I went up there and I did that, (emphasis added)
Considering this testimony, it is a very reasonable inference that the completion of the work involved Cheri climbing the ladder. A trial court’s reasonable inferences of fact should not be disturbed on appellate review unless the record does not furnish a basis for them, or they are clearly wrong. Virgil v. American Guarantee and Liability Ins. Co., 507 So.2d 825 (La.1987). We find no merit to this assignment of error.
Plaintiff next claims that the trial court erred in finding that there was no defect in the ladder such that created an unreasonable risk of harm.
La.C.C. art. 2317 imposes liability on the custodian of a defective thing which presents an unreasonable risk of harm to others.[1] The plaintiff must prove: (1) the thing was in defendant’s custody; (2) the thing had a vice or defect; (3) the vice or defect presented an unreasonable risk of harm to others; and (4) the injury or damage sustained by the plaintiff was caused by the vice or defect. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990); Loescher v. Parr, 324 So.2d 441 (La.1975).
The reasonableness of the risk is determined by balancing the probability and magnitude of the risk against the utility of the thing. Sistler v. Liberty Mutual Ins. Co., supra; Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980).
*1219 In the instant case the evidence on the risk presented by the ladder came primarily from the expert testimony introduced by each side. The trial court was faced with accepting the opinion of either plaintiffs expert or defendant’s expert. Accepting the testimony of plaintiffs expert, the probability of someone falling off of this ladder was significant, due to the “defect”—the looseness resulting from oversized holes wherein original rivets had been replaced by nuts and bolts. Conversely, accepting the testimony of defendant’s expert, the probability of someone falling off this ladder was not any greater because of the “defect.” That is, the probability was no greater than it would have been had the ladder been in new condition.
Where the testimony of expert witnesses differ, it is the responsibility of the trier of fact to determine which evidence is the most credible. Sistler v. Liberty Mutual Ins. Co., supra. Consequently, on appellate review the trial court’s reasonable factual findings, reasonable evaluations of credibility, and reasonable inferences of fact should not be disturbed. Virgil v. American Guarantee and Liability Ins. Co., supra.
We note that Vanderbrook, defendant’s expert, identified the manufacturer of the ladder, and testified that it was a Type 1-A ladder with a 300 lb. capacity, and was rated for extra-heavy industrial use. Vanderbrook researched this information which, if it had ever been on the manufacturer’s label, had been worn off by the years of use. When Lipp, plaintiff’s expert, was questioned about the weight capacity of the ladder, and what type it was, he merely stated that he couldn’t tell because the label had been worn away. Based upon this alone, the trial court could have found that defendant’s expert was more knowledgable—and more credible— than plaintiff’s witness.
The record fully supports the trial court’s acceptance of the opinion given by defendant’s expert over that given by plaintiff’s expert. Although the magnitude of the possible harm was substantial, the probability of someone falling off the ladder because of the “defect” was nonexistent, and the social utility of the ladder was great. Considering all of the evidence, including this expert evidence, evidence that the ladder had been in use for 22 years and had been used numerous times by other workers, nuns, and students, all without any similar accidents, we are unable to say that the trial court was clearly wrong in finding that the ladder did not pose an unreasonable risk of harm to others.
Accordingly, defendants could not be held strictly liable under La.C.C. art. 2317 for the injuries sustained, and damages incurred as a result of those injuries, by virtue of the ladder being in their custody.
To prove that the Society of the Holy Family was negligent in failing to properly maintain the ladder, plaintiff would have had to establish that the ladder presented an unreasonable risk of harm to others. Sistler v. Liberty Mutual Ins. Co., supra; Hunt v. City Stores, supra. Thus, for the foregoing reasons, we find no merit to plaintiff’s argument that the trial court erred in failing to find defendants liable under a theory of negligence.
Plaintiff argues that defendants are liable because the Society did not maintain the ladder as required by the “American National Standard Institute Safety Requirements for Ladders.” Plaintiff cites several provisions of this “code.” Putting aside evidentiary issues, if we accept the testimony of defendant’s expert witness, Vanderbrook, none of these “standards” appear to have been violated—the ladder was maintained in good condition for normal use. Also, accepting Vanderbrook’s testimony, the condition of the ladder created by the oversized holes wherein the original rivets had been replaced by nuts and bolts was not a cause of the accident.
For the foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are assessed against plaintiff/appellant Earl Epps Jr.
AFFIRMED.

. La.C.C. art. 2317 provides:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody.