# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**23-379 consolidated with 23-579**

**VICKI HOOD, ET AL.**

**VERSUS**

**SASOL CHEMICALS (USA) LLC, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPLICATION FOR SUPERVISORY WRIT FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2019-0891
HONORABLE RONALD F. WARE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**SHANNON J. GREMILLION**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Charles G. Fitzgerald, and Gary J. Ortego, Judges.

**WRIT GRANTED. RELIEF DENIED.**

**Robert E. Kerrigan, Jr.**
**Raymond C. Lewis**
**Justine Ware**
**Deutsch Kerrigan, L.L.P.**
**755 Magazine Street**
**New Orleans, LA 70130**
**(504) 593-0697**
**COUNSEL FOR DEFENDANTS/APPLICANTS:**
 **Edward "Butch" Lemelle, Jr.**
 **Sasol Chemicals (USA), LLC**
 **Community Interaction Consulting, Inc.**

**Phillip W. DeVilbiss**
**Terrence D. McCay**
**Kean Miller LLP**
**4865 Ihles Road**
**Lake Charles, LA 70605**
**(337) 430-0350**
**COUNSEL FOR DEFENDANTS/APPLICANTS:**
 **Edward "Butch" Lemelle, Jr.**
 **Sasol Chemicals (USA), LLC**
 **Community Interaction Consulting, Inc.**

**Erich P. Rapp**
**Gregory M. Anding**
**Isaac M. Gregorie, Jr.**
**Erin Lutkewitte Kilgore**
**Kean Miller LLP**
**Post Office Box 3513**
**Baton Rouge, LA 70821-0000**
**(225) 387-0999**
**COUNSEL FOR DEFENDANTS/APPLICANTS:**
 **Sasol Chemicals (USA), LLC**
 **Edward "Butch" Lemelle, Jr.**
 **Community Interaction Consulting, Inc.**

**Jonathan Johnson**
**Kilburn S. Landry**
**The Johnson Firm**
**1419 Ryan Street**
**Lake Charles, LA 70601**
**(337) 433-1414**
**COUNSEL FOR PLAINTIFFS/RESPONDENTS:**
 **Vicki Hood**
 **Jeremy Hood**
 **Jacob Hood**
 **Amy Lopez**
 **Joshua Hood**
 **Amanda Keller**

**V. Ed McGuire, III**
**Plauché, Smith & Nieset, L.L.C.**
**P. O. Drawer 1705**
**Lake Charles, LA 70602**
**(337) 436-0522**
**COUNSEL FOR DEFENDANT/RESPONDENT:**
    **Calcasieu Parish Police Jury**

**GREMILLION, Judge.**

In this civil matter, in which an appeal has been consolidated with an application for supervisory writ, three defendants, Sasol Chemicals (USA), LLC, Edward "Butch" Lemelle, Jr., and Community Interaction Consulting, Inc., seek reversal of the trial court's denial of their motion for summary judgment. For the reasons that follow, we exercise supervisory jurisdiction and grant the writ; however, because we find that a genuine issue of material fact exists, we deny the applicants' requested relief.

## FACTS AND PROCEDURAL POSTURE

The matter involves an accident that allegedly occurred on January 3, 2019. Jacob Hood was driving a U-Haul truck on East Burton Street, also known as Old Spanish Trail, in Sulphur, Louisiana, when a tree (the Tree) located at 3924 East Burton (the Burton property) fell on the cab of the truck. Jacob's father, William, was a passenger. Jacob survived the accident, but William did not. The petition filed by the plaintiffs allege that William lived for some time after the accident.

Jacob, his siblings, and William's surviving spouse filed a survival action for the injuries William sustained and a wrongful death action. Jacob also asserted a claim pursuant to La.Civ.Code art. 2315.6 for witnessing his father's injury and death. The original defendants were Sasol Energy (USA), LLC, Sasol Chemicals (USA), LLC, Sasol (USA) Corporation, and the Calcasieu Parish Police Jury (CPPJ). That petition alleged that the Sasol defendants are part of a single business entity headed by Sasol (USA) Corporation; without endorsing this legal theory, this court will simply refer to "Sasol" for the sake of brevity and clarity. Sasol acquired ownership of the Burton property in December of 2016.

After Sasol's acquisition, the petition alleged, employees of the police jury removed a driveway on the property that extended into a public right-of-way and

damaged the roots of the Tree in the process. The Tree began to lean toward the roadway. The plaintiffs alleged primary negligence on Sasol's part in failing to maintain the property in reasonably safe condition, failing to inspect the property, failing to warn of the danger of the Tree, etc. The police jury's negligence was pleaded in the alternative to Sasol and consisted of its acts in damaging the tree.

By a first supplemental and amending petition, plaintiffs added Edward "Butch" Lemelle, Jr., and Community Interaction Consulting, Inc. (CIC), as defendants. The amended petition alleged that CIC was engaged in a program Sasol instituted around its Westlake plant to purchase property. Mr. Lemelle was an employee of CIC who allegedly failed to properly inspect the Tree and notice "apparent" lightning damage and report that to Sasol. In addition to liability as Mr. Lemelle's master, CIC was alleged to have failed to properly train and supervise him.

In January 2023, plaintiffs filed a motion for partial summary judgment to eliminate the defendants' plea of *force majeur* as an affirmative defense. Sasol, Lemelle, and CIC then filed a motion for summary judgment (the Sasol motion) on the issue of liability, followed by a motion for summary judgment from the police jury. The plaintiffs' *force majeur* summary judgment motion presents no issue currently before us.

### *The Sasol motion*

Sasol, Lemelle, and CIC asserted that plaintiffs would be unable to prove they had actual or constructive notice of any defect in the Tree that posed an unreasonable risk of harm. In support of this proposition, the Sasol motion was accompanied with the affidavit of Lemelle; excerpts of Lemelle's deposition; the affidavit of Kim Cusimano, Sasol's Senior Manager of Corporate Affairs for the Americas; excerpts of the deposition of John George; excerpts from the deposition of Dr. Frederick

2

Fellner; and the affidavit of Scott Courtright, together with meteorological data from the days before the accident.

*Lemelle affidavit*

Lemelle is a resident of Mossville, Louisiana. From 2014 through 2018, he was employed by CIC. He assisted Sasol in purchasing properties in Mossville. He inspected the Burton property before Sasol purchased it. Every time he inspected the property, which was "multiple times a week," he "could see that [the Tree] was still living and had green needles."

*Lemelle deposition excerpts*

During his employment with CIC, Lemelle did have to recommend that Sasol remove a tree from one of its other properties. That tree had a hole in the bark about a foot and a half from its base. Lemelle drives by the Burton property two or three times a week.

*Cusimano affidavit*

The affiant served as Manager of Corporate Affairs for Lake Charles. A Community Information Line was established by Sasol to receive concerns about the Westlake plant and Sasol's various properties. These concerns would have gone directly to Cusimano's office. There was never a complaint about the Burton property. One complaint was lodged about a tree on another Sasol property that extended over the adjacent owner's boundary.

*John George deposition*

Mr. George is the Site Services and Property Manager for Sasol. George testified about the overhanging limb instance Cusimano's affidavit referenced.

*Dr. Frederick Fellner deposition*

Dr. Fellner, whose qualifications and curriculum vitae were not filed with the motion, testified that not every tree that leans has a defect. He examined the Tree

and found that it was still alive when it fell. The Tree still had needles and sapwood, both of which indicate the Tree was living. At some time, approximately eleven or twelve years earlier, the Tree had been struck by lightning, though. It exhibited "an attempt at response wood for 11 or 12 years." There was a "trace" mark from the lightning strike on the side of the Tree opposite the road. Trees that have been struck once by lightning have a low failure rating.

The lightning strike "set into motion a decay process which ultimately culminated in the demise" of the Tree. Excess rot at the base of the Tree caused its failure. This rot would have required a close inspection and "a few remedial field exercises for that rot to have been evident." The Tree's rot was concealed inside the trunk. Decay in the interior of a tree can exist without greatly reducing its strength.

*Scott Courtright affidavit*

Courtright is an arborist retained by Sasol to investigate the Tree's failure. He inspected the Tree and saw no apparent defect. There was no evidence of any hole in the bark or exterior manifestation of the internal rot.

There was a "dim" lightning scar on the Tree. That dim scar "would not have provided notice to anyone—let alone a layperson—that there may have existed any brown rot within the Tree's inner column." He added, "[E]ven to an expert arborist such as myself it is difficult to discern where the lightning scar was on the Tree."

Plaintiffs filed an opposition to the Sasol motion. They attached the depositions of Dr. Fellner, Mr. Courtright, Mr. Lemelle, Theresa Champeaux, and John George, and the affidavits of Dr. Fellner, McKeever Edwards, and Samuel Roberts.

*Dr. Fellner affidavit*

In his affidavit, Dr. Fellner attested to reviewing photos of the tree retrieved from Google. Those photos show that the top of the tree had been missing since at

4

least May 2014. A March 2008 Google photo also showed the top missing. The tree exhibits a definite lean toward the street, and the tree's canopy is weighted in that direction, too. Dr. Fellner estimated the lean at between fifteen and twenty degrees.

Dr. Fellner's affidavit stated, "The lean of the tree, the flat top [from the dead area], the lack of [vertical] correction, the dead parts of the top of the tree and unbalanced crown were all readily observable by anyone as shown on a Google photo from May 2014, five years prior to the subject incident, as well as in 2008."

Dr. Fellner examined the Tree's root ball: "Examination of the root ball and trunk of the tree showed a void at the base of the tree and the ground which would have created an open and obvious gap between the tree and the ground." All of these defects would have been apparent when Sasol purchased the Burton property in December 2016: "In short, it is my opinion that Mr. Lemelle, his employer, and Sasol should have known of the condition of this tree and had it removed."

*Affidavit of McKeever Edwards*

Mr. Edwards resides at 4002 E. Burton. He is very familiar with the Tree, which "had been leaning for a long time. However, the lean of the tree increased over time, particularly after the [CPPJ] removed a culvert at 3924 East Burton Street." Mr. Edwards noticed that the top of the Tree was missing after a lightning strike. He considered the Tree to pose a significant enough hazard that he planned to not drive under it.

*Affidavit of Samuel Roberts*

Mr. Roberts resides at 3939 E. Burton. He attested to the same essentials as Mr. Edwards except he did not attest to avoiding driving under the Tree.

5

*Deposition of Scott Courtright*

Courtright affirmed that the Tree's crown was unbalanced. He saw no root damage when he inspected the Tree. He saw evidence of the lightning strike. Had he known beforehand everything he knows now, Courtright would have recommended that the Tree be removed.

*Deposition of Edward Lemelle*

In the excerpts of his deposition submitted by Plaintiffs, Mr. Lemelle testified that he learned of Sasol's program to purchase properties in the community and went to see what price he could receive for his own. In this conversation, the CIC representative learned that Lemelle was a long time resident of Mossville, so he was hired. Lemelle received training from another gentleman, who oversaw Lemelle as he conducted about twelve inspections. Thereafter, Mr. Lemelle operated independently. Mr. Lemelle has no real recollection of the Tree at the time he inspected the Burton property. Mr. Lemelle would drive by the Burton property once or twice a week. He does not recall the Tree leaning toward the road.

*Theresa Champeaux deposition*

Ms. Champeaux works for the CPPJ. The excerpt of her deposition indicates that had the CPPJ removed the Tree, it would have hired a contractor to perform the work because of its size.

*John George deposition*

Mr. George does not know whether any Sasol employees inspected the properties. Any problems with properties would have been reported by CIC.

*Action of the trial court*

Sasol's motion was heard on April 14, 2023. The trial court denied the Sasol motion in open court. This application for supervisory writ followed. This court granted the application for the limited purpose of ordering the consolidation of the

6

application with the pending appeal of the judgment granting CPPJ's motion for summary judgment, which bears this court's docket number 23-579. *Hood v. Sasol Chemicals (USA) LLC*, 23-379 (La.App. 3 Cir. 9/12/23) (unpublished opinion).

## ANALYSIS AND DISCUSSION

Appellate courts review summary judgments de novo utilizing the same analysis employed by a trial court: do the pleadings, memoranda, affidavits, depositions, answers to interrogatories, and other documents that may properly be considered demonstrate that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law? La.Code Civ.P. art. 966; *Litel Explorations, L.L.C. v. Aegis Dev. Co., L.L.C.*, 20-373 (La.App. 3 Cir. 11/12/20), 307 So.3d 1087, *writ denied*, 20-1428 (La. 2/9/21), 310 So.3d 184. De novo review is undertaken regardless of whether the matter arises from an appeal or in the exercise of our discretionary jurisdiction. *Id.*

The provisions of the Louisiana Civil Code pertinent to this matter are Articles 2317 and 2317.1. *See Loescher v. Parr*, 324 So.2d 441 (La.1975); *Grant v. Allstate Ins. Co.*, 96-1028 (La.App. 3 Cir. 6/4/97), 696 So.2d 275, *writs denied,* 97-1579 (La. 10/10/97), 703 So.2d 605 and 97-1717 (La. 10/10/97), 703 So.2d 606. Louisiana Civil Code Article 2317 provides, "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications." Louisiana Civil Code Article 2317.1 reads:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall

7

preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

Thus, an element of a plaintiff's burden of proof in such cases is actual ("he knew") or constructive notice ("in the exercise of reasonable care, should have known") of the ruin, vice, or defect that caused the damage. Because the plaintiffs bear the burden of demonstrating actual or constructive notice, La.Code Civ.P. art. 966(D)(1) provides that Sasol, as the mover, need only "to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim," which then shifts the burden to the adverse party "to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law."

Sasol asserts that *the* cause of the Tree's failure was brown rot in its trunk and that the brown rot was not susceptible of discovery by any means available to a layman. In support of this proposition, Sasol points to the testimonies of Dr. Fellner and Mr. Courtright; both experts, Sasol asserts, agree that the brown rot was the cause of failure and was not readily susceptible to observation. Without notice of the brown rot, Sasol cannot be found liable for the Tree's failure.

The plaintiffs assert that a more holistic approach to this issue is warranted: the missing crown, flat top, unbalanced canopy, precarious lean, lightning scar, and gap between the roots and the ground were all conditions that should have excited inquiry and should have been discovered by a reasonably prudent landowner. They, too, point to Dr. Fellner and Mr. Courtright to support their position.

We agree with the plaintiffs. Dr. Fellner's deposition indicates that the lightning strike set the decay process in motion. Dr. Fellner attested in his affidavit that a gap existed between the root ball and the ground that should have been apparent to anyone. He stated, "In short, it is my opinion that Mr. Lemelle, his

employer, and Sasol should have known of the condition of this tree and had it removed." It is clear that Dr. Fellner relates several or all of the defects that he considers apparent to the lightning strike that set the decay process in motion. Mr. Courtright does not disagree with that assessment; he disagrees with Dr. Fellner as to how apparent the defects actually were.

We find that a genuine issue of material fact exists regarding constructive notice of the defect or defects in the Tree that allegedly led to this accident; therefore, we decline to grant Sasol Chemicals (USA), LLC, Edward "Butch" Lemelle, and Community Interaction Consulting, Inc., their requested relief.

**WRIT GRANTED. RELIEF DENIED.**